**Ex parte Thomas Smith MATHES, III.**

**No. 685–88.**

Court of Criminal Appeals of Texas,
En Banc.

April 22, 1992.

Rehearing Denied June 3, 1992.

William E. Hall, Jr. and George E. Renneberg, Conroe, for appellant.

Peter C. Speers, III, Dist. Atty., Thomas D. Glenn, Asst. Dist. Atty., Conroe, and

Robert Huttash, State's Atty., Austin, for the State.

■■■■■■■■■■■■■■

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

■ The question in this capital case is whether, after a jury has previously found guilt for killing one victim, but determined that there is no probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society, the State could constitutionally hale him before a new jury to litigate that issue again in another capital murder case for killing a second victim in the same transaction. See *Ashe v. Swenson,* 397 U.S. 436, at 446, 90 S.Ct. 1189, at 1195, 25 L.Ed.2d 469, at 477 (1970); *Padgett v. State,* 717 S.W.2d 55, at 57 (Tex.Cr.App.1986).

Appellant was charged in separate indictments with capital murder of two individuals, respectively, alleging that he killed each victim while in the course of commit-

ting and attempting to commit robbery of both.[1] In his first trial appellant was convicted of capital murder of Debra Davis; the jury found he acted deliberately, but then answered "No" to the second special issue. *Mathes v. State,* 765 S.W.2d 853, at 855 (Tex.App.—Beaumont 1989), PDR refused.

When the State announced its intention to try appellant for capital murder of John Vandiver and to seek the death penalty once again, appellant filed his application for writ of habeas corpus, invoking the doctrines of Double Jeopardy, Res Judicata and Collateral Estoppel. Tr. 2–5. After hearing thereon, the habeas court denied relief on findings fact and conclusions of law. *Id.,* at 11, 13–14.[2]

Relying on *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and *Ashe v. Swenson,* supra, the Beaumont Court of Appeals held "the jury's negative determination of the continuing threat issue in [appellant's] first trial collaterally estops the state from relitigating the issue in [appellant's] upcoming

---

1. Both indictments were returned the same day. In trial court case no. 18556, the indictment charged in pertinent part appellant (and other named parties)

   "on or about the 22nd day of February 1985 ... did then and there while in the course of committing and attempting to commit robbery of John Vandiver and Debra Davis, *intentionally cause the death of John Vandiver by shooting him with a firearm* [.]"

   In case no. 18557, the indictment charged in pertinent part that appellant (and same other named parties)

   "on or about the 22nd day of February 1985 ... did then and there while in the course of committing and attempting to commit robbery of John Vandiver and Debra Davis, *intentionally cause the death of Debra Davis by shooting her with a firearm and cutting her with a knife* [.]"

   Tr. 16 and 17. (All emphasis here and throughout is supplied by the writer of this opinion unless otherwise indicated.)

2. The habeas court found, *inter alia:*

   "4. The offenses alleged in this cause occurred at the same time and place and during the course of the same criminal incident as that for which the defendant was convicted in cause no. 18,557.

   5. The evidence which would be presented by the State in the trial of this case would be

virtually identical to the evidence presented in the defendant's trial in cause no. 18,557."

Tr. 13. Those findings are fully supported by the record in that the parties so stipulated to those facts and more, *viz:*

   "[Prosecutor]: Essentially, [appellant's statement] is correct, Your Honor.... The evidence that we would introduce in the trial of Cause No. 18556 would be in all material respects exactly the same evidence that the jury heard [in no. 18557] to which and based on which they answered no answer [sic] to the second punishment question."

S.F. 7. The verdict clearly shows the jury foreman printed "NO" in answer to the second special issue. Tr. 20.

From the trial record in cause no. 18557 the habeas court made an additional factual finding, *viz:*

   "6. * * * * The court finds that the state's evidence in the case would be susceptible of an interpretation that the role of the defendant in causing the death of John Vandiver was qualitatively different from his role in causing the death of Debra Davis."

Tr. 13. Accordingly, as a matter of law the court concluded that the negative answer to special issue two in the first trial "does not collaterally estop the State from prosecuting the defendant for capital murder or the Court from submitting Special Issue No. 2 to the jury in this case." *Id.,* at 14.

trial," and overruled the order denying relief (with one justice dissenting). *Ex parte Mathes*, 755 S.W.2d 161, at 164 (Tex.App.— Beaumont 1988).

We granted review of the sole ground presented by the State substantially in terms of the question framed above. PDR, at 3. There and in its brief the State advances the "qualitatively different" theory espoused by the habeas court, see note 2, *ante*, and accepted by the dissenting justice below, see *Ex parte Mathes*, supra, at 165. Like the Beaumont Court of Appeals, *id.*, at 164, we also reject that theory for the reasons about to be developed.

" 'Collateral estoppel' ... means simply that when *an issue of ultimate fact* has once been determined in a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

*Ashe v. Swenson*, supra, 397 U.S. at 443, 90 S.Ct., at 1194, 25 L.Ed.2d, at 475.

■■■ Whether there is a probability that a defendant found guilty of capital murder would constitute a continuing threat to society is an issue of ultimate fact, the resolution of which in a bifurcated proceeding is determinative of the judgment and sentence of the trial court. A negative answer to special issue two means the prosecution has "failed to prove its case," and thus is the functional equivalent of an "acquittal" of the death penalty. *Arizona v. Rumsey*, 467 U.S. 203, at 209–212, 104 S.Ct. 2305, at 2309–2310, 81 L.Ed.2d 164, at 181–182 (1984); *Bullington v. Missouri*, 451 U.S. 430, at 433–444, 101 S.Ct. 1852, at 1860, 68 L.Ed.2d 270, at 282

3. In *Ashe v. Swenson,* supra, the Supreme Court cautioned that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationally." The dissenting judge below, *Mathes,* at 163, and now State, Brief, at 7, argue that the same approach charted by the Supreme Court where the previous judgment of acquittal was based on a *general verdict* is applicable here, *viz:*

"[A reviewing court must] 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an

(1981). Therefore, the doctrine of collateral estoppel is indeed applicable to the punishment phase of a capital murder trial. Once a reviewing court determines that "the jury actually decided Special Issue No. 2 in appellant's first capital murder trial ..., then the State would be estopped from relitigating the issue, thus preventing it from seeking the death penalty in the instant case." *Padgett v. State*, 717 S.W.2d 55, at 57 (Tex.Cr.App.1986).[3]

■■■ The Collateral Estoppel doctrine precludes the State from relitigating an ultimate issue on punishment even though it contends that because a different victim was killed in the same transaction its evidence at the second proceeding may be "qualitatively different." As the Supreme Court pointed out in *Ashe v. Swenson*, that is "precisely what the constitutional guarantee forbids," *viz:*

"After the first jury had acquitted [Ashe] of robbing [one victim], Missouri could certainly not have brought him to trial again on that charge. Once a jury has determined on conflicting testimony that there was at least a reasonable doubt that [Ashe] was one of the robbers, the State *could not present the same or different identification evidence in a second prosecution* for the robbery of [the victim in the first trial] in the hope that a different jury might find that evidence more convincing. The situation is *constitutionally no different here, even though the second trial related to another victim.*"

*Id.*, 397 U.S. at 446, 90 S.Ct., at 1195–1196, 25 L.Ed.2d, at 477.

*ISSUE other than* that which the defendant seeks to foreclose from consideration.' [note omitted]."

*Id.*, 397 U.S. at 444, 90 S.Ct., at 1194, 25 L.Ed.2d, at 475–76.

In the instant case, of course, we do not deal with a general verdict. Instead we have the same specific essential ultimate *issue* on which appellant prevailed in the first trial and now seeks to foreclose a second prosecution of that *issue*. Thus we need not look beyond identity of the controlling issues under Article 37.071(b) to conclude that a rational jury could not have grounded a complete punishment verdict upon any other issue.

Just as held in *Ashe v. Swenson,* supra, and this Court opined in *Padgett v. State,* supra, so also here "the situation is constitutionally no different." In the first trial the jury "acquitted" appellant on an essential ultimate fact determinative of the death penalty, therefore the State could not constitutionally require appellant to "run the gantlet" a second time in the hope that a different jury might find that evidence stipulated to be the same as in the first trial more convincing.[4]

Accordingly, the judgment of the Beaumont Court of Appeals granting relief is affirmed.

CAMPBELL, J., concurs in the result because of the stipulations by the State as to the evidence relative to the issue of future dangerousness. Without such stipulation, it could not be presumed that the evidence would be the same and accordingly that the doctrine of collateral estoppel would apply.

WHITE, J., dissents.

McCORMICK, Presiding Judge, dissenting.

Appellant, Thomas Smith Mathes, III, was indicted and tried for the capital murder of Debra Davis. The jury in that trial answered the punishment questions as provided by Article 37.071(b)(1) and (2), V.A.C.C.P. The jury answered "yes" to the first question, finding that appellant acted deliberately with a reasonable expectation that death would result. The jury, however, answered "no" to the question of whether there existed a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. As such, appellant was sentenced to life imprisonment pursuant to Article 37.071(e), V.A.C.C.P. Thereafter, the State proceeded on the indictment alleging the capital murder of John Vandiver.

In the trial court prior to the second trial, appellant filed an application for writ of habeas corpus alleging that the doctrine of collateral estoppel prevented the State from again trying him for capital murder. According to appellant, the question of his future dangerousness had been resolved in the Davis case and could not be relitigated by the parties in the Vandiver case. The trial court denied appellant's writ and he appealed the decision to the Beaumont Court of Appeals. The Court of Appeals reversed the trial court, finding that the State was collaterally estopped from relitigating the future dangerousness issue previously decided in appellant's favor. *Ex parte Mathes,* 755 S.W.2d 161 (Tex.App.— Beaumont 1988).

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). In deciding whether a party is collaterally estopped from litigating an issue the Supreme Court in *Ashe* determined that the reviewing court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. at 1194. If we follow *Ashe's* mandate to examine the records before us and to determine whether the jury has litigated appellant's future dangerousness, extant at this time, we can only conclude that that issue has not been litigated.

In a capital murder case, evidence to be presented in the punishment phase concerning the future dangerousness of a defendant is guided by Article 37.071, V.A.C.C.P. That Article provides in part that:

---

4. We observe, however, the Supreme Court recognizes "that when application of our traditional double jeopardy analysis would bar a subsequent prosecution, '[an] exception may exist where ... the *additional facts* necessary to sustain that [first] charge *have not occurred* or have not been discovered despite the exercise of due diligence. See ... *Ashe v. Swenson,* [397 U.S. 436, 453, n. 7, 90 S.Ct. 1189, 1194, n. 7, 25 L.Ed.2d 469 (1970)] (Brennan, J., concurring).'" *Grady v. Corbin,* 495 U.S. 508, 516, n. 7, 110 S.Ct. 2084, 2090, n. 7, 109 L.Ed.2d 548 (1990).

"Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment.... *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence.* (emphasis added.)"

Consistent with Supreme Court decisions, see, e.g., *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion), we have interpreted Article 37.071 so as to allow the introduction of any evidence relevant to the determination of future dangerousness of a capital murder defendant. " 'Justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense *together with the character and propensities of the offender.'* " *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991, quoting *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937) (emphasis added). See also *Williams v. New York,* 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949) (indicating that the sentencer may consider "the convicted person's past life, health, habits, conduct, and mental and moral propensities"). Therefore, where, as in the case before us, the circumstances of the offender, in particular, whether the offender poses a future danger to society, is at issue, we are in no position to say that the issue has been litigated as it relates to the Vandiver murder. Indeed, if we accept appellant's arguments that the State may not relitigate his future dangerousness, it would follow that appellant could commit additional acts of murder exempt from the Texas capital murder statutes; we do not believe that the State or Federal Constitution sanctions such impunity.

The Court of Appeals, however, reversed the trial court's judgment relying upon *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). *Bullington* was a capital murder case under Missouri's bifurcated system. After a defendant is found guilty of capital murder, the jury hears punishment evidence to determine the existence of mitigating and aggravating factors—such factors being specifically listed in the capital murder statute. A jury must make specific findings designating the factors warranting imposition of the death penalty. Bullington's first conviction, where the jury determined the issues regarding imposition of the death penalty in his favor, was set aside on appeal. The Supreme Court held that Missouri was barred by the Double Jeopardy Clause of the Fifth Amendment from again seeking the death penalty in the same case after the initial conviction had been reversed. *Bullington,* 451 U.S. at 446, 101 S.Ct. at 1862. See also *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). *Accord Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Cooper v. State,* 631 S.W.2d 508, 513 (Tex.Cr.App. 1982). The Court of Appeals reasoned that application of collateral estoppel principles, having the same constitutional basis as that of double jeopardy, would require that the State be automatically precluded from again seeking the death penalty. With this I cannot agree.

The basis for the Supreme Court's holding in *Bullington* is that because Missouri established a procedure for its trial of capital offenses whereby in the punishment phase specific factual issues are to be decided, a failure by the State to meet its burden of proof regarding those particular punishment issues acts as an acquittal thereon. Therefore, in a case where a retrial is required, the State is barred by principles of double jeopardy from again litigating those factual issues. Specifically, in *Bullington,* the Supreme Court wrote:

"By enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri *explicitly requires* the jury to determine whether the prosecution has 'proved its case.' Both *Burks* [*v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) ] and *Greene* [*v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) ],

as has been noted, state an exception to the general rule relied upon in *North Carolina v. Pearce* [395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1960) ]. That exception is applicable here, and we therefore refrain from extending the rationale of *Pearce* to the very different facts of the present case. Chief Justice Bardgett, in his dissent from the ruling of the Missouri Supreme Court majority, observed that the sentence of life imprisonment which petitioner received at his first trial meant that 'the jury has already acquitted the defendant of whatever was necessary to impose the death sentence.' [*State ex rel. Westfall v. Masson*, 594 S.W.2d 908, 922 (Mo.1980) ]. We agree." *Bullington*, 451 U.S. at 445, 101 S.Ct. at 1861 (emphasis in the original).

Thereafter, the *Bullington* Court discussed the purposes of the Double Jeopardy Clause: the State with its resources and power should not be allowed to make repeated attempts to convict an individual which could possibly wear down even the innocent. The Court concluded, therefore:

"Given these considerations, our decision today does not at all depend upon the State's announced intention to rely only upon the same aggravating circumstances it sought to prove at petitioner's first trial or upon its statement that it would introduce no new evidence in support of its contention that petitioner deserves the death penalty. *Having received 'one fair opportunity to offer whatever proof it could assemble,'* Burks v. United States, 437 U.S. at 16 [98 S.Ct. at 2150], *the State is not entitled to another.*" *Bullington*, 451 U.S. at 446, 101 S.Ct. at 1862 (emphasis added).

Has the State, in the trial of appellant *for another capital offense*, been given "one fair opportunity" to prove appellant's future dangerousness in regard to this capital offense?

The rule of collateral estoppel derives its applicability to criminal proceeding from the Fifth Amendment of the United States Constitution, viz:

"... [N]or shall any person be subject for the *same offense* to be twice put in jeopardy of life or limb." (emphasis added.)

No one can rationally argue that the Davis murder and the Vandiver murder are the same offense under any theory.

Appellant has allegedly violated the Texas capital murder statute, not once but twice. He has murdered two individuals and has therefore committed two separate criminal offenses. *Ex parte Rathmell*, 717 S.W.2d 33 (Tex.Cr.App.1986). He has been tried only for the murder of one of the two individuals. The statement of facts from the Davis trial is not before us but proof regarding the second case will necessarily involve a litigation of appellant's "acts, motives, state of mind, intent, demeanor and degree of malice" unique to the Vandiver killing. See *Mathes*, 755 S.W.2d at 165 (Brookshire, J., dissenting). These issues in the Vandiver case may be quantitatively different than those in the Davis case and a jury's determination of future dangerousness, based upon facts particular to the Vandiver case, would be entirely justified. See *Livingston v. State*, 739 S.W.2d 311, 340 (Tex.Cr.App.1987) cert. denied, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Landry v. State*, 706 S.W.2d 105, 112–113 (Tex.Cr.App.1985) cert. denied, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167 (1986); *Demouchette v. State*, 591 S.W.2d 488, 491–492 (Tex.Cr.App.1979) cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). As such, *Bullington's* concept of double jeopardy—allowing the State but one fair opportunity to prove death as an appropriate punishment—is not applicable, where, as here, the State has been given *no* opportunity to litigate the facts of the Vandiver murder.

During the hearing on appellant's application for writ of habeas corpus, the parties stipulated:

"[DEFENSE ATTORNEY]: ... [T]he Petitioner is, in fact, the same individual that has been charged with the offense of capital murder in both Cause No. 18557 and 18556; that the details regarding the offense which is the basis of both

indictments are basically the same in that it was one continuing episode that happened at the same time; that there were two individuals that allegedly were murdered on that date, one being John Vandiver and the other Debra Davis; during the trial of Cause No. 18557, that virtually all of the details regarding the death of John Vandiver were admitted into evidence; and that the evidence with regard to Cause No. 18556 would be virtually the same as evidence that has already been presented in Cause No. 18557.

"Further, it is stipulated that in Cause No. 18556, which case is still pending and has not been tried, that the State has made known its intention to seek the death penalty.

"I would ask [the State's attorney] if that is correct with regards to the stipulation of the parties.

"[STATE'S ATTORNEY]: Essentially, that's correct Your Honor. We intend at this time to pursue Cause No. 18556 which is an indictment for capital murder.... The evidence that we would introduce in the trial of Cause No. 18556 would be in all material respects exactly the same evidence that the jury heard for the *other defendant, 18557 to which and based on which they answered no answer to the second punishment question.*" (emphasis added.)

In short, the parties have agreed the evidence that will be presented in appellant's trial will be the same as that presented in a co-defendant's trial.[1] No mention is made as to upon what evidence the State will rely in establishing the future dangerousness of appellant.[2] Without such a stipulation or evidence in the record which reflects no difference in the evidence between the Vandiver and Davis trials, we cannot say, as a

matter of law, that the State and appellant have litigated the issue of appellant's future dangerousness as it would exist at the time of trial. See *State of Illinois v. Vitale,* 447 U.S. 410, at 421, 100 S.Ct. 2260, at 2267–68, 65 L.Ed.2d 228 (1980). Consequently, the State is not, at this time, prevented from again seeking the death penalty in the subsequent trial of appellant for the offense of capital murder of another individual, and we should not so hold.

After *Bullington,* this Court decided *Padgett v. State,* 717 S.W.2d 55 (Tex.Cr. App.1986). In that case, as in the present case, the defendant was charged with a subsequent capital offense. He applied for a writ of habeas corpus alleging that, since the jury in his previous capital murder trial was unable to answer the second punishment question, the State was collaterally estopped from again seeking the death penalty. We held that the jury's inability to answer the future dangerousness question at defendant's trial "was not an actual determination of that issue." 717 S.W.2d at 58. As such, we concluded that the State was not collaterally estopped from seeking the death penalty in the subsequent trial. The *Padgett* Court opined that had the jury answered the second punishment question in the affirmative the State would be prevented from relitigating the issue. See 717 S.W.2d at 57. The Court failed to consider the possibility of the State presenting evidence in defendant's second trial different from that presented in the first trial. As discussed above, such evidence would make principles of collateral estoppel or double jeopardy inapplicable to the subsequent determination of future dangerousness.

As noted at the outset, collateral estoppel "means simply that when an issue of

---

1. Appellant was indicted with three other individuals for the capital murder of John Vandiver. Apparently the trial of one of the co-defendants for his participation in the Vandiver murder has taken place and it is upon the same facts presented in that case that the State will prove *the offense of capital murder in appellant's case.* A statement of facts from the co-defendant's trial is not before us. I recognize that the majority have determined the stipulation set forth above causes an affirmance of this case, but do not believe the rule of collateral estoppel

is applicable here. Furthermore, the stipulation is not as clear as the majority reads it. Note the underscored language.

2. Considering that future dangerousness may be established by appellant's conduct occurring up to, and even including conduct that may occur during the trial of his case, it is doubtful that a stipulation of such evidence will ever be possible prior to the second trial.

*ultimate fact* has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit." "Ultimate" has been defined as "incapable of further analysis, division, or separation." Webster's New Collegiate Dictionary, 1981. An "ultimate fact" must therefore be an historic fact which, having been once determined, cannot be changed. The absence of further dangerousness is not absolute. Evidence of future dangerousness may develop which changes the determination, but an historic fact—an ultimate fact—will not change. Collateral estoppel principles have no application to this cause.

Finally, the majority relies primarily on *Bullington v. Missouri,* supra, and *Arizona v. Rumsey,* supra, in reaching its conclusion. The majority fails to note, however, that in both the Missouri and Arizona capital punishment schemes the aggravating factors are not determined at the guilt stage as in Texas, but are reserved for the punishment phase. Further, those aggravating factors involve historic factual determinations "comparable to a trial" on the issue of guilt. *Rumsey,* supra. Those cases are clearly distinguishable. Collateral estoppel has no application to the case presented here.

I dissent.

MILLER, J., joins that part of this dissent that reasons that future dangerousness is not an ultimate (i.e. historic) fact and thus collateral estoppel principles have no application to this case.

BENAVIDES, Judge, dissenting.

Assuming, as we must under *Ex parte Rathmell,* 717 S.W.2d 33 (Tex.Crim.App. 1986), that the State may successively prosecute Appellant for the nearly contemporaneous capital murders of two individuals, the question presented in this case is whether it may put him at risk of a death sentence in the second prosecution after a jury finding in the first that it was not probable he "would commit criminal acts of violence that would constitute a continuing threat to society[.]" V.A.C.C.P., Art. 37.-071(b)(2). Under ordinary principles of collateral estoppel, as embodied in the Double Jeopardy Clause of the Fifth Amendment, the issue of Appellant's future dangerousness may not be litigated at his second trial if it was the same issue resolved in his favor at the first. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

Plainly, the issue of an individual's probability to commit criminal acts of violence is a different issue every time it arises. If it were not, a person once found unlikely to pose a continuing threat could never thereafter be found likely to do so, no matter how substantially the probability might in fact have been altered by intervening events and circumstances. But because special issue number two is necessarily an inquiry concerning probability at the time of trial, it follows that trials occurring at different times present somewhat different questions under this special issue. Accordingly, the State is not, in my opinion, categorically estopped to litigate the issue of Appellant's future dangerousness at his second trial or at a subsequent trial.

Nevertheless, it seems to me that Appellant is undoubtedly entitled to the benefit of any earlier finding in his favor on future dangerousness, and that the State may not seek to prove at his second trial anything which is inconsistent with such a finding. In other words, I think it must be conclusively presumed at Appellant's second trial that he probably did not pose a continuing threat to society when the issue was submitted for jury consideration at his first trial. An affirmative finding of future dangerousness at his second trial should not be permissible, therefore, unless events or circumstances transpiring after his first trial have actually changed in the interim the probability of his future dangerousness.

A number of procedural consequences follow from this. First, the trial judge must grant a motion for instructed verdict on the second issue if the State produces no evidence of events or circumstances occurring after the first trial which are relevant to that issue. If such events or circumstances have occurred, I am inclined to

think that the State may rely both on those events and on any other events and circumstances which were actually available for jury consideration at the first trial. In any case, because the State is entitled to rely at the second trial upon the same proof it offered at Appellant's first trial, so long as it can also produce evidence of subsequent events or circumstances relevant to the question of future dangerousness, the rationality of jury decisionmaking cannot reasonably be assured without an instruction to the effect that Appellant was not likely to be a continuing threat to society at the conclusion of his first trial. Indeed, a review of evidentiary sufficiency on appeal is not really possible without such an instruction. *Cf. Boozer v. State,* 717 S.W.2d 608 (Tex.Crim.App.1984). Thus, while I agree that the benefit of Appellant's earlier victory may not be taken from him in a subsequent trial, I think that a rule which would entirely foreclose future litigation of his dangerousness throws out the baby with the bath water.

The question in this case is difficult because it calls for an exceptional application of unexceptional rules. It is just the sort of case which is widely supposed to make bad law, and in spite of the Court's best efforts to solve the problem fairly, it has done just that in this case. The plurality opinion, in giving Appellant the benefit of an earlier finding to which he is undoubtedly entitled, has overshot the mark and held by necessary implication that he may not be found dangerous enough for the death penalty when the issue next arises even if he meantime proves himself to be so, as for example by murdering two prison guards while awaiting trial. Because I am certain that special issue number two calls for an up-to-date judgment in each case about the probability of future violent conduct, I cannot join an opinion which would effectively chain such a judgment to the past.

On the other hand, our Presiding Judge and those who join his dissent, contend for a rule which would surely deprive Appellant of his earlier success for no better reason than that circumstances of the second offense are potentially different than those of the first. In my view, this analysis has nothing to do with the question presented. Circumstances of the second offense were, or could have been, taken into account by the jury at Appellant's first trial anyway. But, even if such circumstances were excludable at his first trial under some rule of evidence, it would still be clear to me that the issue of future dangerousness *as of that time,* as opposed to the evidence offered to prove it, was finally and conclusively resolved in Appellant's favor. Accordingly, whatever evidence might be offered at Appellant's next capital murder trial, it would certainly violate the Double Jeopardy Clause to there authorize in any manner a finding that Appellant was probably a future threat to society at the time of his first trial. Because it seems to me that our Presiding Judge's dissenting opinion would permit such a result, I am unable to join it either.

Finally, resolution of this problem in the present context is complicated somewhat by the prosecutor's acknowledgment at a pretrial hearing that "[t]he evidence that we would introduce in the [second] trial … would be in all material respects exactly the same that the jury heard for the [first trial.]" Were I to understand this comment as a commitment to refrain from offering any evidence at the penalty phase of trial not actually offered at Appellant's earlier trial, including any evidence of intervening events relevant to the probability of his future dangerousness, and were I also to believe such a commitment sufficient to bar the introduction over objection of any such additional evidence at his second trial, I might be moved to forbid further litigation of future dangerousness by prospectively directing a negative answer to the second special punishment, conditioned of course on the fact of Appellant's conviction. But I do not understand it this way. Rather, the prosecutor has, in my view, frankly admitted only that both killings, because they were contemporaneous, must necessarily be established by proof of essentially the same facts, not that he intends gratuitously to withhold proof of as yet unknown future events or circumstances

affecting the question of Appellant's dangerousness.

For these reasons I would reverse the judgment of the Court of Appeals.