The STATE of Texas, Appellant,

v.

Jim VANDERBILT, Appellee.

No. 09–96–202 CR.

Court of Appeals of Texas, Beaumont.

Submitted June 18, 1998.

Decided Aug. 26, 1998.

Douglas M. Barlow, Layne Walker, Beaumont, appointed as special prosecutors, for state.

C. Haden Cribbs, Jr., Beaumont, Steve C. Losch, Longview, for appellee.

Before BURGESS, STOVER and HILL,[1] JJ.

## OPINION

HILL, Justice (Assigned).

The State of Texas appeals the trial court's pre-trial rulings in the prosecution of Jim Vanderbilt for a murder committed over twenty years ago. Acting upon Vanderbilt's writ of habeas corpus, the United States Court of Appeals for the Fifth Circuit set aside his death sentence and remanded the case to the trial court for a new punishment hearing. *Vanderbilt v. Collins,* 994 F.2d 189, 200 (5th Cir.1993). After the remand, the trial court sustained Vanderbilt's pleas of double jeopardy and collateral estoppel, precluding the State from seeking the death penalty. Furthermore, the trial court granted Vanderbilt a new trial as to his guilt or innocence of the offense. The State contends in three points of error that the trial court erred and abused its discretion in sustaining Vanderbilt's pleas of double jeopardy and collateral estoppel and that the trial court erred and abused its discretion in granting Vanderbilt's motion to enforce his right to a new trial on guilt or innocence.

We reverse the trial court' s order that precludes the State from seeking the death penalty because such remedy is not barred by the Double Jeopardy Clause or by the doctrine of collateral estoppel because: (1) there has never been a jeopardy-terminating event; (2) there has never been a negative finding on the issue of Vanderbilt's future dangerousness; and (3) there has never been a finding by a proper reviewing court that there was no evidence to support the jury's finding of that issue in Vanderbilt's first trial. Further, we find that the evidence was sufficient to support the jury's finding on the issue. We also reverse the trial court's order that Vanderbilt receive a new trial as to his guilt or innocence because the amendment to Tex.Code Crim. Proc. Ann. art. 44.29(c) (Ver-

non Supp.1998) providing for a new trial on punishment only where the error affected only the punishment was effective at the time that the trial court made its order and the legislature intended the amendment to apply to all cases.

■ The State contends in points of error numbers one and two that the trial court erred and abused its discretion in granting Vanderbilt's pleas of double jeopardy and collateral estoppel. Vanderbilt was convicted of capital murder and a death penalty was assessed. In the appeal of that conviction, the Texas Court of Criminal Appeals reversed Vanderbilt's conviction based upon trial error, without ruling on the sufficiency of the evidence to support the jury's finding of future dangerousness at the punishment phase of the trial. *Vanderbilt v. State,* 563 S.W.2d 590, 599, n. 4 (Tex.Crim.App.1978).

■ The protection of the Double Jeopardy clause applies only if there has been some event, such as an acquittal, that terminates the original jeopardy. *See Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242, 250–51 (1984). There are only three possible jeopardy-terminating events: (1) an acquittal; (2) a trial court determination of insufficiency of the evidence leading to a directed verdict of acquittal; and (3) an unreversed determination on direct appeal that there was insufficient evidence to support the conviction. *See Vanderbilt v. Collins,* 994 F.2d 189, 195 (5th Cir.1993). Therefore, the reversal of a cause by an appellate court for trial error, without consideration of a pending claim of insufficiency of the evidence to support the conviction, is not an event that terminates the original jeopardy. *See U.S. v. Miller,* 952 F.2d 866, 874 (5th Cir.1992). We therefore find that the doctrine of double jeopardy does not bar the State from seeking the death penalty in this case because, as to the punishment issue, there has been no event that terminates the original jeopardy.

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b)

(Vernon 1988).

"Collateral estoppel" means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469, 475 (1970). Inasmuch as the issue of Vanderbilt's punishment has never been determined by a valid and final judgment, the determination of that punishment is not precluded by the doctrine of collateral estoppel.

The Fifth Circuit, upon remanding this case to the trial court for a new punishment hearing, stated, "... we agree with our district judge and apparently the Texas Court of Criminal Appeals that the state failed to do so the first time." *Vanderbilt*, 994 F.2d at 200. The Court was referring to the issue of whether the State had presented sufficient evidence to support the jury's finding of future dangerousness. The Court in the same opinion had rejected Vanderbilt's double jeopardy claim and was remanding the case back to the state trial court for a new trial as to punishment only. It follows that it was not the intention of the Fifth Circuit Court of Appeals to make a valid and final judgment that Vanderbilt did not constitute a continuing threat to society. Vanderbilt contends that by stating that the evidence was not sufficient to support a finding of future dangerousness the opinion had that effect, regardless of the intention of the Fifth Circuit. He relies upon the cases of *Ex parte Mathes*, 830 S.W.2d 596, 598 (Tex. Crim.App.1992) and *Padgett v. State*, 717 S.W.2d 55, 57 (Tex.Crim.App.1986). We find both cases to be distinguishable.

In *Mathes*, the Court held that where the jury in one capital murder case had made a negative answer to the future dangerousness issue, the defendant could not be subject to a second capital murder trial for the murder of a second victim killed in the same transaction. *Mathes*, 830 S.W.2d at 599. In *Padgett*, the Court held that a capital murder jury's inability to answer the special issue relating to the defendant's future dangerousness did not constitute a bar to the State seeking the death penalty for the capital murder of another victim killed in the same

robbery because the jury did not answer the question. *Padgett*, 717 S.W.2d at 58. In this case the jury in Vanderbilt's first trial answered the issue in a manner favorable to the State.

Vanderbilt also relies upon the cases of *United States v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 69 L.Ed. 262 (1924); *Hicks v. Quaker Oats*, 662 F.2d 1158, 1167 (5th Cir.1981); *United States v. Hill*, 473 F.2d 759, 762 (9th Cir.1972); *Ex parte Granger*, 850 S.W.2d 513 (Tex.Crim.App.1993).

In *Ex parte Granger*, the Court held that where the defendant had been convicted of capital murder, the conviction had been reversed because of failure to prove the element that made the crime a capital murder rather than murder, and the jury had received instructions on both capital murder and on murder, the Double Jeopardy Clause did not preclude the prosecution of the defendant for murder.

The cases of *United States v. Moser, supra* and *Hicks v. Quaker Oats, supra,* were both civil cases in which certain issues had been previously determined in a prior case between the same parties, precluding their being redetermined, based upon the doctrine of res judicata or collateral estoppel. In this case the issue of Vanderbilt's future dangerousness has not been previously determined in a manner adverse to the State. Neither case is authority for Vanderbilt's argument that the Fifth Circuit's gratuitous dicta in a collateral proceeding to the effect that the State failed to meet its burden of proof on the issue in his first trial precludes the State from presenting the issue in a new punishment proceeding.

In *United States v. Hill*, 473 F.2d 759 (9th Cir.1972), the Court held that a trial court's dismissal of obscenity indictments on the basis that the material involved was not obscene constituted a trial and an acquittal in which jeopardy had attached, even though the judge did not think jeopardy had attached. *Id.* at 762. An acquittal is a jeopardy-terminating event. *See Vanderbilt*, 994 F.2d at 195. In this case there has been no acquittal or any other jeopardy-terminating event.

Vanderbilt correctly points out that in Texas, when there is a point of error in which the appellant contends that the evidence is insufficient to support the trial court's judgment, the appellate court must conduct a review of the sufficiency of the evidence. *See Edmonson v. State,* 951 S.W.2d 6 (Tex.Crim.App.1997). However, the fact that there should have been a jeopardy-terminating event, but was not, does not bar retrial of the issue. *See Miller, supra.*

Of course, Vanderbilt's entire argument is based upon the premise that the evidence at his first trial was insufficient to support the jury's answer on the issue of his future dangerousness. In reviewing the sufficiency of the evidence at the punishment stage of a capital trial, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could make the finding beyond a reasonable doubt. *See Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Crim.App.1994).

The evidence presented in Vanderbilt's first trial showed that Vanderbilt, a former policeman, saw his victim at a high school parking lot and abducted her at gunpoint. He took her, in her own car, to his home. He put her in handcuffs and took her inside, where he intended to rape her. He did not rape her because he could not get an erection.

Becoming concerned that his victim was looking around the room, trying to remember details of his house, Vanderbilt took her to a country road, where he shot her in the back of the head with a .357 magnum pistol. She was slightly crouched in front of him when he shot her. He left her in a pool of blood and abandoned her car alongside a highway. He left the car with its lights flashing. Before leaving the car, he sought to wipe off any fingerprints. When he was a short distance from the car, a motorist picked him up and took him back to the city of Amarillo. After returning home, Vanderbilt went back to the high school, got his car, and drove around Amarillo looking for another girl. The State introduced no additional evidence at the punishment phase of Vanderbilt's first trial.

A jury is permitted to look at several factors in its review of future dangerousness, including, but not limited to:

(1) the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

(2) the calculated nature of the defendant's acts;

(3) the forethought and deliberateness exhibited by the crime's execution;

(4) the existence of a prior criminal record and the severity of the prior crimes;

(5) the defendant's age and personal circumstances at the time of the offense;

(6) whether the defendant was acting under duress or the domination of another at the time of the offense;

(7) psychiatric evidence; and

(8) character evidence.

*See Cantu v. State,* 939 S.W.2d 627, 642 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997).

Under the evidence a rational jury could have determined that the murder in this case was deliberate and carefully premeditated by Vanderbilt. He did not just randomly run into the victim. He went, armed, to a high school, where he abducted her at gunpoint. She was a high school female student, unlikely to be a physical threat to Vanderbilt or physically capable of pursuing him. *See Duffy v. State,* 567 S.W.2d 197, 199 (Tex.Crim.App.1978). (Deceased was 80 year old woman). Even if the jury were to accept Vanderbilt's statements that he did not originally intend to kill her, a rational jury could have determined that he decided to do so after he became aware that she would be a witness against him. *See Dinkins v. State,* 894 S.W.2d 330, 360 (Tex.Crim.App.1995); *Johnson v. State,* 853 S.W.2d 527, 532 (Tex.Crim.App.1992). (Both involving murder for the purpose of eliminating a witness). In *Dinkins,* the defendant spent a considerable amount of effort in hunting down the deceased in order to kill her. *See id.* In this case Vanderbilt spent a considerable amount of effort in taking the deceased out to a country road before killing her. The de-

ceased was slightly crouched in front of Vanderbilt when he shot her. *See Martinez*, 924 S.W.2d at 696 and *Dinkins*, 894 S.W.2d at 359. (Victims either lying face down on the floor, kneeling, or sitting on the floor).

There is no indication that Vanderbilt had a prior criminal record. In fact, he had been a police officer. He was in his early twenties at the time of the offense. There is no indication that he was under any duress at the time of the offense. He was not under domination by anyone at the time of the offense. There was no psychiatric testimony or character testimony.

We conclude that the evidence is sufficient to support the jury's finding of future dangerousness because it shows a wanton and callous disregard for human life. *See Dinkins*, 894 S.W.2d at 358. In urging that the evidence at the first trial was insufficient to support a finding of future dangerousness, Vanderbilt relies upon numerous cases, including *Martinez v. State*, 924 S.W.2d 693 (Tex.Crim.App.1996); *Hughes v. State*, 897 S.W.2d 285 (Tex.Crim.App.1994); *Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App.1992); *Ellason v. State*, 815 S.W.2d 656 (Tex.Crim. App.1991); *Smith v. State*, 779 S.W.2d 417 (Tex.Crim.App.1989); *Huffman v. State*, 746 S.W.2d 212 (Tex.Crim.App.1988); *Smith v. State*, 744 S.W.2d 86 (Tex.Crim.App.1987); *Marras v. State*, 741 S.W.2d 395 (Tex.Crim. App.1987), *rev'd on other grounds*, 851 S.W.2d 853, 860 (Tex.Crim.App.1993); *Beltran v. State*, 728 S.W.2d 382 (Tex.Crim.App. 1987); *Ex parte Guzmon*, 730 S.W.2d 724 (Tex.Crim.App.1987); *Keeton v. State*, 724 S.W.2d 58 (Tex.Crim.App.1987); *Roney v. State*, 632 S.W.2d 598 (Tex.Crim.App.1982); *Garcia v. State*, 626 S.W.2d 46 (Tex.Crim. App.1981); *Wallace v. State*, 618 S.W.2d 67 (Tex.Crim.App.1981); *Brasfield v. State*, 600 S.W.2d 288 (Tex.Crim.App.1980), *rev'd on other grounds*, 739 S.W.2d 813, 819 (Tex. Crim.App.1987); *Warren v. State*, 562 S.W.2d 474 (Tex.Crim.App.1978); and *Duffy v. State*, 567 S.W.2d 197 (Tex.Crim.App. 1978).

We have examined all of these cases. In four of them, *Duffy, supra, Cantu, supra, Hughes, supra, and Martinez, supra*, the Court found that the evidence was sufficient to support the finding of future dangerousness. *Duffy*, 567 S.W.2d at 209; *Cantu*, 842 S.W.2d at 676; *Hughes*, 897 S.W.2d at 293; and *Martinez*, 924 S.W.2d at 698. In *Ex parte Guzmon, supra*, the issue was whether Guzmon's trial counsel was ineffective. *Id.* at 725. The Court noted that the shooting in that case was spontaneous, unlike the deliberate, pre-meditated shooting in this case. *Id.* Two of the cases involved burglaries where the defendant did not take a weapon to the house that was being burglarized. These were *Ellason*, 815 S.W.2d at 662 and *Warren*, 562 S.W.2d at 475. Several of the cases involved the type of spontaneous shooting that might occur in an armed robbery. These include *Keeton*, 724 S.W.2d at 59; *Roney*, 632 S.W.2d at 602; *Garcia*, 626 S.W.2d at 49. *Wallace*, 618 S.W.2d at 68; *Smith*, 744 S.W.2d at 87–88; *Beltran*, 728 S.W.2d at 384; and *Marras*, 741 S.W.2d at 399.

The case of *Brasfield v. State, supra*, involved the kidnapping and asphyxiation of a six-year-old child. *Id.* at 292. As in this case, there was no psychiatric evidence, character evidence, or evidence of prior criminal acts. *Id.* The child's body was found with bruises on its head and face. *Id.* There were numerous stab wounds inflicted after death. *Id.* The child's underclothes were pulled down around his ankles, but no determination could be made regarding possible sexual molestation because of the decomposition of the body. *Id.* The Court found this evidence insufficient to support the finding of future dangerousness, but without much discussion as to the basis for that conclusion. *Id.* at 294. We believe that the limited information as to the crime and its commission was the primary basis for the Court's decision.

In *Huffman v. State, supra*, the defendant beat and strangled his victim during the course of a robbery. *Id.* at 214. The defendant was depressed because his girlfriend had left him to visit her ex-husband. *Id.* at 216. At or near the time of the offense, the defendant was drinking heavily. *Id.* He testified that he took four hits of acid just prior to the event. *Id.* He indicated that he did not remember anything after taking the acid and drinking whiskey, until he woke up

in the county jail. *Id.* He was violent in the county jail. *Id.* The Court held that the evidence was insufficient to support the jury's finding of future dangerousness. *Id.* at 225. In this case there is no indication that Vanderbilt was under any personal stress nor that he was under the influence of alcohol or drugs at the time of the offense.

This leaves only the case of *Smith v. State,* 779 S.W.2d 417 (Tex.Crim.App.1989). In that case the defendant tied his victim to a bedpost with pantyhose and sexually assaulted her. *Id.* at 419. He then untied her and stabbed her fourteen times in the chest and back, including once through the heart. *Id.* A forensic pathologist testified that the victim's death was a very typical sex murder— brutal, but not extremely brutal. *Id.* The Court held that the evidence was insufficient to support a finding of future dangerousness. *Id.* at 421–22. We find it significant that the Court recently referred to its conclusion in that case as being inexplicable. *See Martinez,* 924 S.W.2d at 697.

In summary, we believe that our conclusion that the evidence is sufficient to support the jury's finding on the issue of future dangerousness is supported by the authorities in such cases, and we do not find our opinion to be in conflict with the cases cited by Vanderbilt. We sustain the State's points of error numbers one and two.

█ The State insists in point of error number three that the trial court erred and abused its discretion in granting Vanderbilt's motion to enforce his right to a new trial on guilt or innocence. After Vanderbilt's conviction was reversed on the first appeal, he was tried again and again received the death penalty. The Texas Court of Criminal Appeals upheld this second conviction. *Vanderbilt v. State,* 629 S.W.2d 709 (Tex.Crim.App. 1981). Subsequently, a federal district court, in a habeas corpus proceeding, ordered a new punishment trial because there was a violation of Vanderbilt's rights under the case of *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The United States Court of Appeals for the Fifth Circuit upheld the trial court's order in *Vanderbilt v. Collins, supra* at 994 F.2d at 200. It held that the State was free to pursue the

death penalty in the new punishment hearing. *Id.* The Fifth Circuit Court released its mandate on July 13, 1993.

Article 44.29(c) of the Texas Code of Criminal Procedure became effective after the release of the Fifth Circuit mandate, but prior to the date the trial court ordered a new trial for Vanderbilt on the issue of guilt or innocence. It provides that if a court sets aside or invalidates a death sentence on the basis of any error affecting punishment only, the court shall not set the conviction aside but, instead, commence a new punishment hearing. Sections 5 and 6 of the 1993 amendatory act of art. 44.29(c) provides that the amendment applies to all offenses whether committed before, on, or after the effective date of the act. TEX.CODE CRIM. PROC. ANN. art. 44.29(c) historical note (Vernon Supp. 1998) [Act approved June 17, 1993, 73rd Leg., R.S., ch. 781, §§ 5–6, 1993 Tex. Gen. Laws 3059]. We construe the legislature's intent to be that in all cases, regardless of when committed, in which a death sentence has been set aside based upon error affecting punishment only, there is to be only a new punishment hearing, not a new trial on the issue of his or her guilt or innocence.

The amendment of art. 44.29(c), as applied to Vanderbilt, does not punish as a crime an act previously committed, which was not innocent when done; it does not make more burdensome the punishment for a crime after its commission; and it does not deprive Vanderbilt of any defense available according to the law at the time when the act was committed. *See Grimes v. State,* 807 S.W.2d 582, 587 (Tex.Crim.App.1991). Consequently, the amendment's application to Vanderbilt is not prohibited by either the *Ex Post Facto Clause* of the United States Constitution or the *Ex Post Facto* Provision of the Texas Constitution. *See id.* Therefore, we hold that the trial court erred in awarding Vanderbilt a new trial on the issue of his guilt or innocence.

█ Vanderbilt argues that he is entitled to a new trial on the issue of his guilt or innocence because the Fifth Circuit mandate setting his death sentence was returned before the effective date of the amendment.

However, as we have noted, the legislature intended that the amendment be effective as to all cases.

Vanderbilt is correct in stating that if the legislature had not amended art. 44.29(c) he would have been entitled to a new trial on guilt or innocence. The legislature took away that right by its amendment. However, as we have previously noted, the amendment does not violate the *Ex Post Facto* Clause of the United States Constitution or the *Ex Post Facto* Provision of the Texas Constitution.. Therefore, the trial court erred in not applying the amendment to this case.

Vanderbilt relies upon art. 37.07(3) of the Texas Code of Criminal Procedure and the cases of *Penry v. Lynaugh,* 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), *appeal after new trial, Penry v. State,* 903 S.W.2d 715, 716 n. 2 (Tex.Crim.App.1995); *Knox v. Collins,* 928 F.2d 657, 662 (5th Cir. 1991), *appeal after new trial, Knox v. State,* 934 S.W.2d 678, 680 (Tex.Crim.App.1996); *Granviel v. Estelle,* 655 F.2d 673 (5th Cir. 1981), *appeal after new trial, Granviel v. State,* 723 S.W.2d 141, 147 (Tex.Crim.App. 1986); *Bradford v. State,* 873 S.W.2d 15, 23 n. 4 (Tex.Crim.App.1993); *Ex parte Chambers,* 688 S.W.2d 483, 485 (Tex.Crim.App. 1984); *Adams v. State,* 624 S.W.2d 568, 569 (Tex.Crim.App.1981); *Pierson v. State,* 614 S.W.2d 102, 108 (Tex.Crim.App.1981); *Eads v. State,* 598 S.W.2d 304 (Tex.Crim.App. 1980); *Bullard v. State,* 548 S.W.2d 13, 21 (Tex.Crim.App.1977); *Whan v. State,* 485 S.W.2d 275, 277 (Tex.Crim.App.1972); *Ocker v. State,* 477 S.W.2d 288, 289 (Tex.Crim.App. 1972); *Ex parte Bryan,* 434 S.W.2d 123, 126 (Tex.Crim.App.1968); *Ellison v. State,* 432 S.W.2d 955 (Tex.Crim.App.1968); and *Monroe v. State,* 871 S.W.2d 801 (Tex.App.— Houston [14th Dist.] 1994, no pet.).

We have examined all of these cases and find that none would allow the granting of a new trial on guilt or innocence at a time when there is an effective statute, applicable to all cases, requiring that there be a new trial as to punishment only. Application of art. 37.07 is controlled by art. 44.29. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2 (Vernon Supp.1998).

Vanderbilt acknowledges that a procedural statute applies to litigation from its effective date. *See Granviel v. State,* 552 S.W.2d 107, 116 (Tex.Crim.App.1976). He contends, however, that such a statute cannot be retroactively applied to undo steps in a pending case that were completed before the statute took effect, unless the legislature clearly intended that result. The purpose of the amendment to art. 44.29(c) of the Texas Code of Criminal Procedure was to eliminate the cost and expense of a completely new capital trial when there is error only affecting punishment. The legislature, by providing that the amendment was to apply to cases regardless of when the offense was committed, indicated its intent to apply the statute to every case. We sustain the State's point of error number three.

We reverse the trial court's order granting Vanderbilt a new trial on the issue of his guilt or innocence and the trial court's order precluding the State from seeking the death penalty in this case. We remand this cause for the purpose of a new hearing on punishment in accordance with this decision and the mandate of the Fifth Circuit Court of Appeals.

REVERSED AND REMANDED.