The STATE of Texas, Appellant,

v.

William Harold BRABSON, Appellee.

No. 1309–95.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 25, 1998.

Rehearing Denied Sept. 30, 1998.

Opinion Concurring in Denial of
Rehearing Sept. 30, 1998.

J. Stephen Cooper, Dallas, for appellee.

Michael J. Sandlin, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

■■■■■■■

## OPINION ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge, delivered the opinion of the Court in which KELLER, PRICE, HOLLAND and WOMACK, Judges, joined.

In this case, we must decide whether the Dallas County District Attorney is collaterally estopped from litigating at a motion to suppress hearing in a criminal prosecution the issue of probable cause for appellee's arrest when the Texas Department of Public Safety has received an adverse ruling on that issue in a prior administrative proceeding to revoke appellee's driver's license. We hold the Dallas County District Attorney is not collaterally estopped from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution.

Appellee was arrested for and eventually charged with driving while intoxicated (DWI). The Texas Department of Public Safety sought to revoke appellee's driver's license at an administrative hearing pursuant to Article 6701*l*–5, Section 2(f), V.A.C.S. However, the administrative judge declined to revoke appellee's driver's license. The administrative judge also made a written finding that the police lacked probable cause to arrest appellee.

In the DWI criminal prosecution, appellee sought to have evidence suppressed which he claimed was seized as a result of an illegal arrest based upon a lack of probable cause.

Appellee contended the Dallas County District Attorney was collaterally estopped from litigating the issue of probable cause for his arrest in the criminal prosecution because that issue had been decided adversely to the Texas Department of Public Safety in the administrative proceeding to revoke appellee's driver's license. The trial judge agreed and granted appellee's motion to suppress.

On the Dallas County District Attorney's direct appeal, the Court of Appeals, relying on *Burrows v. Texas Dept. of Public Safety,* 740 S.W.2d 19, 20–21 (Tex.App.—Dallas 1987, no pet.), reversed the trial court's ruling, and held that collateral estoppel does not arise from administrative proceedings and that no other valid theories supported the trial court's ruling on appellee's motion to suppress. See *State v. Brabson,* 899 S.W.2d 741, 745–49 (Tex.App.—Dallas 1995). We granted appellee's petition for discretionary review to examine the Court of Appeals' holding on the collateral estoppel issue (ground one) and the Court of Appeals' holding that no other valid theories supported the trial court's ruling on appellee's motion to suppress (grounds two and three).[1]

■■■ This Court has adopted for criminal cases the federal common-law doctrine of "administrative collateral estoppel."[2] See *United States v. Utah Construction and Mining Company,* 384 U.S. 394, 419–23, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Ex parte Tarver,* 725 S.W.2d 195, 199 (Tex. Cr.App.1986); *Black's Law Dictionary* 45 (6th ed.1990). This doctrine states:

"When an administrative agency is acting in a judicial capacity and resolves disputed *issues of [ultimate] fact properly before it*

---

1. We dismiss grounds two and three of appellee's petition for discretionary review as improvidently granted. Ground one of appellee's petition for discretionary review states:

   "Did the Court of Appeals err in re-affirming its holding in *Burrows v. Texas Department of Public Safety,* 740 S.W.2d 19, 20–21 (Tex. App.—Dallas, 1987, no pet.) that the issue preclusion component of the collateral estoppel doctrine cannot arise from administrative hearings on license revocation proceedings based on an accused's refusal to submit to a blood-alcohol test?"

2. This case does not implicate the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy." See *Ashe v. Swenson,* 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970); *Showery v. Samaniego,* 814 F.2d 200, 203–04 (5th Cir.1987). *Ashe* holds the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy" may "bar a later prosecution for a separate offense where the Government has *lost* an earlier prosecution involving the same facts." *United States v. Dixon,* 509 U.S. 688, 705, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556, 573 (1993) (citing *Ashe* ) (Emphasis in Original).

which the *parties* have had an *adequate opportunity* to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." See *Utah Construction and Mining Company[,* 384 U.S. at 419–23], 86 S.Ct. at 1559–60; *Tarver,* 725 S.W.2d at 199 (Emphasis Supplied); see also *Dedrick [v. State],* 623 S.W.2d [332] at 337 [(Tex. Cr.App.1981)] (McCormick, J., dissenting) (collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit).[3]

■ The first question we address is whether the parties in the administrative proceeding and the criminal prosecution are the same. The party that sought to revoke appellee's driver's license in the administrative proceeding was the Texas Department of Public Safety. See Article 6701*l*–5, Section 2(f). The Texas Department of Public Safety and the Dallas County District Attorney are not the same parties. Therefore, collateral estoppel principles do not preclude the Dallas County District Attorney from litigating the issue of probable cause for appellee's arrest

at the suppression hearing in the criminal prosecution.[4]

■ In addition, assuming the Texas Department of Public Safety and the Dallas County District Attorney are the same parties called the "State," we would still have to decide whether the issue of probable cause for appellee's arrest was "properly before" the administrative agency and whether the "State" had an "adequate opportunity" to litigate the issue. See *Ex parte Tarver,* 725 S.W.2d at 199; 4 K. Davis, *Administrative Law Treatise,* Section 21:2 (2d ed.1983) (the *Utah Construction and Mining Company* "administrative collateral estoppel" test was "carefully crafted" with each detail having significance). The law applicable to appellee's case, Article 6701*l*–5, Section 2(f),[5] authorized the administrative judge to make *only* three findings: (1) whether probable cause existed that such person was driving or in actual physical control of a motor vehicle in a public place while intoxicated, (2) whether the person was placed under arrest by the officer and was offered an opportunity to give a specimen under the provisions of the Act, and (3) whether such person refused to give a specimen upon the request of the

---

**3.** The distinction between whether an administrative agency is acting in a purely administrative capacity or in a judicial capacity turns on whether the administrative agency is performing "adjudicative" functions. See, e.g., *Utah Construction & Mining Co.,* 384 U.S. at 421–423, 86 S.Ct. at 1560 (example of administrative agency acting in a judicial capacity); *Davis v. Young,* 412 A.2d 1187, 1193–94 (D.C.1980) (administrative agency not acting in judicial capacity because there was no evidence it was acting in anything more than an investigative capacity); *City Wide Learning Center, Inc. v. William C. Smith & Co., Inc.,* 488 A.2d 1310, 1313 (D.C.App.1985) (applicable statute conferred adjudicative functions on the administrative agency); see also 4 K. Davis, *Administrative Law Treatise,* Section 21:2 (2d ed.1983). Based on this, the administrative judge in this case was acting in a judicial capacity.

**4.** We are not unmindful of this Court's cases that hold law enforcement agencies and district attorneys are, in effect, the same parties for the analysis of claims falling within *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (Fourteenth Amendment's Due Process Clause imposes an affirmative duty on the prosecution to disclose to the defendant exculpatory evidence in the prosecution's possession). See

*Ex parte Mitchell,* 853 S.W.2d 1, 4 (Tex.Cr.App.), cert.denied, 510 U.S. 864, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993); *Thomas v. State,* 841 S.W.2d 399, 402–04 (Tex.Cr.App.1992) (the prosecution, through its agent, the Smith County Sheriff's Department, failed to disclose *Brady* material). However, these cases do not apply in determining whether the Department of Public Safety and the Dallas County District Attorney are the same "parties" for collateral estoppel purposes.

This is because the underlying principle of *Brady* is the "avoidance of an unfair trial to the accused." See *Thomas,* 841 S.W.2d at 402. One of the underlying principles of the common-law doctrine of collateral estoppel is that a party should have an opportunity to litigate an issue of ultimate fact. Here, the Dallas County District Attorney had no opportunity to litigate the issue of probable cause for appellee's arrest in the administrative proceeding to revoke appellee's driver's license. It cannot be said that permitting the Dallas County District Attorney to litigate the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution results in an "unfair trial to the accused."

**5.** Repealed by Acts 1995, 74th Leg., ch. 165, Section 24(a), eff. September 1, 1995.

officer. See *State v. Groves*, 837 S.W.2d 103, 105 (Tex.Cr.App.1992).

Article 6701*l*–5, Section 2(f), does not authorize the administrative judge to make findings on the issue of probable cause for an arrest nor does it put the "State" on notice that this issue may be litigated at the administrative hearing. This is important for collateral estoppel purposes because the question of whether probable cause existed that appellee operated a motor vehicle while intoxicated is a different question from whether probable cause existed for his arrest. Cf. *Neaves v. State*, 767 S.W.2d 784, 786–87 (Tex. Cr.App.1989) (whether probable cause to believe the defendant had been driving while intoxicated existed at the time the police requested a blood or breath specimen from the defendant is not an issue of ultimate fact in the defendant's prosecution for driving while intoxicated). Resolution of the former question does not necessarily resolve the latter question. Cf. *id.* The ultimate issues to be resolved in the administrative proceeding and in the motion to suppress hearing in the criminal prosecution are not the same.

Therefore, it cannot be said the issue of probable cause for appellee's arrest was "properly before" the administrative judge or that the "State" had an "adequate opportunity" to litigate that issue at the administrative proceeding. See *Ex parte Tarver*, 725 S.W.2d at 199; *Utah Construction & Mining Co.*, 384 U.S. at 417–21, 86 S.Ct. at 1558–59 (findings by administrative agency have no finality if they are not relevant to dispute over which the administrative agency has jurisdiction). Based on the foregoing, the administrative judge's finding of no probable cause for appellee's arrest does not preclude the "State" from litigating that issue in the criminal proceeding.

Our decision in this case makes sense when one also considers the underlying purpose of an exclusionary rule. An exclusionary rule excludes evidence at a defendant's *criminal trial* if the government obtains that evidence in violation of the defendant's constitutional and statutory rights. See Article 38.23(a), V.A.C.C.P., (providing that no evidence obtained "by an officer or other person in violation of" the law shall be admitted in evidence against the accused *on the trial of any criminal case*); see also *United States v. Leon*, 468 U.S. 897, 904–13, 104 S.Ct. 3405, 3411–15, 82 L.Ed.2d 677 (1984); *Nix v. Williams*, 467 U.S. 431, 441–43, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984). The "core" rationale of an exclusionary rule is to deter the police from illegally seizing evidence by making that evidence inadmissible at the defendant's criminal trial. See *Nix*, 467 U.S. at 441–43, 104 S.Ct. at 2508.

■ An exclusionary rule does not apply to exclude evidence at an administrative proceeding to revoke a person's driver's license primarily because the "local law enforcement official is already 'punished' by the exclusion of the evidence in the state criminal trial." See *United States v. Janis*, 428 U.S. 433, 447–49, 96 S.Ct. 3021, 3029, 3027–35, 49 L.Ed.2d 1046 (1976). Since an exclusionary rule does not apply to an administrative proceeding to revoke a person's driver's license, then there was no need for the administrative judge to make findings on the legality of appellee's arrest.[6]

Finally, it has been suggested our decision in this case is inconsistent with this Court's opinions in *Tarver*, *Groves* and *Neaves*, the latter two cases having been decided under the law applicable to appellee's case—Article

---

6. We note the current law for the administrative suspension of a person's driver's license based on that person's refusal to provide a breath or blood specimen is now contained in Subchapters C and D of Chapter 724 of the Transportation Code which became effective on September 1, 1995. See Acts 1995, 74th Leg., ch. 165, Section 1, eff. September 1, 1995. We note the Legislature has expressly authorized the administrative judge to make findings on whether "reasonable suspicion or probable cause existed to stop or arrest the person." See Texas Transportation Code, Section 724.042(1). However, we also note the Legislature has expressly provided that the determination of the administrative judge "does not preclude litigation of the same or similar facts in a criminal prosecution." See Texas Transportation Code, Section 724.048(a)(3); see also *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (Congress may provide by statute that common-law collateral estoppel principles do not apply to findings of administrative agencies acting in a judicial capacity).

6701*l*–5, Section 2(f). However, *Groves* and *Neaves* did not require this Court to decide whether collateral estoppel principles precluded the "State" from litigating at a criminal proceeding an ultimate fact issue that was decided adversely to the "State" in the prior administrative proceeding to revoke a person's driver's license. See *Groves*, 837 S.W.2d at 106 (nothing in the record indicated the issue of probable cause to arrest the defendant was previously litigated in the administrative proceeding); *Neaves*, 767 S.W.2d at 786–87 (since whether probable cause to believe the defendant had been driving while intoxicated existed at the time the police requested a breath or blood specimen from the defendant was not an issue of "ultimate" fact in the defendant's criminal prosecution for driving while intoxicated, analysis of the specific questions raised by the parties was pretermitted). Any suggestion in *Groves* and *Neaves* that collateral estoppel principles would apply in cases like this was pure dicta and unnecessary to our ultimate disposition of those cases.

Our opinion does not conflict with the "narrowness" of this Court's holding in *Tarver.* See *Tarver*, 725 S.W.2d at 200. In *Tarver*, the parties were the same, the ultimate fact issue in the probation revocation proceeding and the subsequent criminal prosecution was the same, the ultimate fact issue was decided adversely to the "State" in the probation revocation proceeding, and that fact issue was "properly before" the trial court in the probation revocation proceeding. See *id.*

We affirm the judgment of the Court of Appeals.

MANSFIELD, J., concurs in the judgment of the Court.

OVERSTREET, J., dissents.

WOMACK, Judge, concurring.

Although I join the Court's opinion, I would like to devote more attention to the question of privity.

The doctrine of mutuality of estoppel now requires that the party who is to be estopped by a prior judgment be a party who was bound by the prior judgment, or one of that party's privies. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990). One question in this case is whether the plaintiff in this case was a party to, or in privity with a party to, the administrative license revocation proceeding. I believe that, because of the fractured nature of Texas government, the plaintiffs in the two actions were neither the same nor privies.

Our present constitution, which was adopted in 1876, does not follow the federal model that puts all executive power in the hands of the president. The framers of our constitution, influenced by the political philosophy of the Jacksonian era and the despotic control of the reconstruction governor, deliberately chose to decentralize executive authority. The constitution created seven officers in the executive department,[1] only one of whom is appointed by the governor, the others being elected by popular vote. This in effect creates a separation of powers within the executive department itself. A.J. Thomas, Jr. & Ann Van Wynen Thomas, "Interpretive Commentary," 1B *Vernon's Annotated Constitution of the State of Texas* 680 (1997).

Administrative power is further decentralized by the creation of more than a hundred independent state agencies, practically all of which are headed either by elected executives or by part-time boards and commissions, that are independent of the governor and of each other. Even if the governor appoints the members of a commission (with the approval of the Senate which traditionally respects the rule of "senatorial courtesy" which allows a nomination to be vetoed by the senator from the nominee's district), the members usually serve overlapping terms that are longer than the governor's four-year term, which makes it difficult for the governor to achieve control of a majority. And it is a gross mistake to assume that even the commissions wield real powers in state agencies; the executive directors chosen by the commissions tend to be the dominant force in the agencies. Clifton McCleskey *et al., The Government and Politics of Texas* 182–194 (7th ed., 1982).

---

1. One officer—the treasurer—was deleted by an amendment in 1995.

That state agencies are not always in privity is made clear by the practice of state agencies to sue each other and to appear on opposite side of lawsuits. Not only may the state sue one of its own agencies, the Attorney General may represent both parties to the suit. *Public Utility Commission v. Cofer*, 754 S.W.2d 121 (Tex.1988). *See State v. Thomas*, 766 S.W.2d 217, 222 (Tex.1989) (Hecht, J., dissenting: "[This is a]n action by the State, represented by the Attorney General, against a state agency, also represented by the Attorney General. In effect the State has sued itself, the Attorney General has argued against himself, and each has both won and lost").

The Department of Public Safety, which was the plaintiff in the administrative license revocation proceeding,[2] is a typical example of an independent state agency. For purposes of this case, the Department is controlled by the Public Safety Commission, which comprises three citizens who are appointed by the governor for staggered six-year terms.[3] The Commission appoints a director who has executive authority in the Department.[4]

The plaintiff in this criminal case, whom the appellee seeks to estop by the administrative decision, is the State of Texas which has given its authority to prosecute DWI cases to more than three hundred independently elected prosecutors, each of whom exercises authority in an area of the state no larger than a judicial district. This model differs from the federal model not only because there is no central prosecuting authority,[5] but also because the prosecutors are officers of the judicial branch of government.[6]

Because the state government has been so deliberately decentralized, I believe that there is not such privity between the Department of Public Safety and the local prosecutor that the administrative decision against the Department would estop the prosecutor from relitigating a fact issue in a criminal trial. *Cf. State v. Fritz*, 204 Conn. 156, 527 A.2d 1157 (1987) (no privity between department of consumer protection and prosecutor); *People v. Trucchio*, 159 Misc.2d 523, 605 N.Y.S.2d 649 (Sup.Ct.1993) (commissioner of motor vehicles and prosecutor did not stand in sufficiently close relationship to be considered same party for purpose of collateral estoppel); *State v. O'Rourke*, 114 N.C.App. 435, 442 S.E.2d 137 (1994) (no privity between department of motor vehicles and prosecutor).

This conclusion is bolstered by the enactment of the statute that contains what is now codified as Section 524.012(e) of the Transportation Code:

A determination [for driver's license suspension]:

(1) is a civil matter;

(2) is independent of and not a bar to any matter in issue in an adjudication of a criminal charge arising from the occurrence that is the basis for the suspension; and

(3) does not preclude litigation of the same or similar facts in a criminal prosecution.

This is a clear statement that findings in administrative license revocation proceedings may not collaterally estop criminal litigation. The statute does not apply to this case because it became effective after the date of the offense alleged in this case.[7] But the statute is valuable as a statement of public policy

2. See Tex. Trans. Code §§ 524. 012(b) ("department" suspends license), 524.041(d) ("department" may appeal).

3. Tex. Govt.Code § 411.003. The Department is under the direction of the governor only in time of emergency. See Tex. Govt.Code § 411.012.

4. Tex. Govt.Code §§ 411.005 *et seq.*

5. The Attorney General of Texas has no general authority to initiate or conduct a criminal prose-

cution. If a prosecutor requests it, the attorney general may provide assistance. Tex. Govt.Code § 402.028.

6. See Tex. Const. art. 5, § 21.

7. The effective date was January 1, 1995. Acts 1993, 73rd Leg. R.S., ch. 886, § 20. The statute did not apply to actions that occurred, or offenses that were committed, before the effective date. *Id.*, § 18. The offense in this case is alleged to have been committed on August 9, 1993.

that would not be possible if a constitutional doctrine of collateral estoppel applied to these proceedings. The legislature did not find it necessary to facilitate this policy by making any accompanying change in the administrative license revocation law or in the structure of state government to decrease the degree of privity between the Department of Public Safety and the local prosecutors.

Judge Baird's dissenting opinion cites *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), for the proposition that the Supreme Court treats different state agencies as the same party, and *Stennett v. State,* 941 S.W.2d 914 (Tex.Cr.App.1996), as holding that the state comptroller and a state prosecutor are the same party for double jeopardy purposes. I am unable to agree that there is any consideration of this issue in those cases; in fact, the word "party" does not appear in the opinion of the Supreme Court in *Kurth Ranch* or in the opinion of this Court in *Stennett.* Neither case had anything to do with collateral estoppel, the doctrine of mutuality of estoppel, or privity.

The dissenting opinion also cites the statement of the Supreme Court that a judgment in a lawsuit between a party and one agency of the United States is res judicata in a lawsuit between the same party and another officer of the United States government. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). This is authoritative as to privity of federal agencies, but it has no authority over the question of privity among state agencies. As I have explained above, the structure of Texas government is markedly different. This is why I believe there is a different answer on the Court's "crucial point" in *Sunshine Coal:* whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication of the issue in controversy. The Department of Public Safety does not have such general authority to represent the interests of prosecutors.

KELLER, J., joins this opinion.

MEYERS, Judge, concurring and dissenting.

After appellee was arrested and charged for Driving While Intoxicated and in a cause styled "The State of Texas vs. William Harold Brabson", the Texas Department of Public Safety attempted to revoke appellee's drivers license. In order to do so, the administrative court held a hearing in which it considered, among other things, whether appellee had been arrested and whether probable cause had existed that appellee was driving or in actual control of a motor vehicle in a public place while intoxicated. TEX. CIV. STAT. art. 6701*l*–5, § 2. Although the administrative court found that appellee had been arrested, it also found, "based on the pleadings, evidence and arguments of counsel", a lack of the requisite probable cause. Appellee's driver's license was therefore not revoked.

Later on, in a cause styled "The State of Texas vs. William Harold Brabson", the Dallas County District Attorney sought to prosecute appellee on the charge that he had been Driving While Intoxicated. Appellee moved to suppress evidence which he claims was seized as a result of his illegal arrest based upon a lack of probable cause. In so doing, he averred that collateral estoppel barred the District Attorney from litigating whether there was probable cause to arrest him since that issue had been decided previously in the administrative hearing. The trial court agreed and granted his motion.

On appeal from the State, the court of appeals addressed the issue of collateral estoppel in two ways. First, it relied on *Burrows v. Texas Department of Public Safety,* 740 S.W.2d 19, 20–21 (Tex.App.—Dallas 1987, no pet.), for the proposition that criminal collateral estoppel cannot arise from an administrative license suspension proceeding. Alternatively, the court held that even if collateral estoppel could have applied to this case it would not bar a prosecution in the instant cause. This, because the court of appeals concluded that appellee had not proven at the suppression hearing that he had been arrested, only detained. Thus, the court of appeals opined, the only question before the trial court was whether the police

officer had reasonable suspicion to justify appellee's warrantless detention, a question different from any litigated at the administrative hearing.

We granted this petition for discretionary review on three grounds. The first deals with whether the court of appeals was correct to hold that, in Texas, we do not recognize the doctrine of administrative collateral estoppel in criminal cases. The second addresses whether or not the court of appeals erred in holding that appellee was not arrested despite an explicit finding by the administrative court that he had been arrested. The third ground does not touch upon collateral estoppel at all.

The majority dismisses the last two grounds for discretionary review as improvidently granted. Therefore, the only question for the Court is that presented in ground for review one; namely, whether *Burrows, supra*, is still the applicable law in this State. This issue is answered on the second page of the majority's opinion where it states, citing *Ex Parte Tarver*, 725 S.W.2d 195, 199 (Tex. Crim.App.1986), that, contrary to anything *Burrows* might have said on the matter, when two parties have litigated an issue in an administrative hearing those same parties are collaterally estopped from re-litigating the same issue in a subsequent criminal proceeding. Nothing else is raised in ground for review one. I join this portion of the majority's opinion.

The majority goes on to further discuss collateral estoppel and the applicability of the elements thereof to the facts in this case. But the court of appeals has not addressed these issues, nor are they addressed or argued in either the petition for discretionary review or any of the briefs before this Court.

Assuming the majority somehow reaches these issues via ground for review two and did not mean to dismiss that ground, I dissent to affirming the court of appeals on this issue. This is so because the court of appeals' entire opinion rests on the premise that the trial court should not have considered the probable cause issue when deciding whether collateral estoppel applied to this case because, according to the court of appeals, appellee did not prove that he was

arrested but only detained. If the trial court concluded that appellee had been detained rather than arrested, then it would not have been concerned with collateral estoppel at all since the issue before it would have been reasonable suspicion, an issue different from probable cause which was before the administrative court. There can be no doubt, therefore, that in deciding that collateral estoppel precluded a re-litigation of the probable cause issue such that the motion to dismiss had to be granted, the trial court implicitly accepted that appellee had been arrested. But did the trial court have any choice but to accept that appellee was arrested if, as the record reflects, the administrative court explicitly said so? The answer, of course, is only if collateral estoppel does not preclude the trial court from litigating the arrest issue. If collateral estoppel barred the trial court from doing anything other than accepting that appellee had been arrested, as the administrative court found, then how could the trial court have erred? The trial court cannot err when it follows the only path the law allows. But, instead of analyzing whether collateral estoppel required that the trial court accept the administrative court's finding on whether appellee was arrested, the court of appeals conducted its own analysis of whether appellee had been arrested and, from its conclusion that he was not arrested, addressed the trial court's collateral estoppel finding on the *probable cause* issue. Even if the court of appeals disagrees with the administrative court's finding that appellee was arrested, it cannot say the trial court erred to accept that finding unless it is willing to engage in a conversation about collateral estoppel as to the *arrest* issue.

Thus, the court of appeals should have either (1) accepted that appellee was arrested and discussed whether the trial court erred to hold that collateral estoppel barred it from litigating the probable cause issue or (2) discussed why the trial court erred to accept that appellee had been arrested. In discussing the effect of collateral estoppel on either the arrest or the probable cause issue, the court of appeals should have asked, as to either, whether *that issue* had been litigated

by the *same parties* in the previous administrative proceeding. Because the court of appeals did nothing of the sort, I would remand the case to them so that they may have an opportunity to do so. To do more, as the majority does, goes beyond the scope of the question upon which we granted review.[1]

I concur and join the Court's opinion as to ground for review one but otherwise dissent.

BAIRD, Judge, dissenting.

In *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), the Supreme Court said we should approach criminal collateral estoppel "with realism and rationality." Because the majority departs from reality to affirm the judgment of the Court of Appeals, I must dissent.

### I.

First, it must be made clear that the majority opinion *never* addresses the grounds

1. In analyzing the collateral estoppel issue, the majority makes the bare proclamation that "[t]he Texas Department of Public Safety and the Dallas County District Attorney are not the same parties" and therefore collateral estoppel does not apply here. This statement is embarrassing in its unsupportable assumption that the district attorney is a party in the criminal proceeding at issue, or for that matter, in *any* criminal proceeding. A district attorney is an elected official. It is the job of the district attorney *to represent* the State of Texas in criminal prosecutions. *See* Tex. Const. art. 5, § 21; Tex.Code Crim. Proc. arts. 2.01, 2.02. The DPS and the district attorney are merely agents or agencies *of* the same entity—the State of Texas. Thus, the case styles in both matters properly reflect the parties as the "State of Texas" versus appellee.

1. Appellee's grounds for review state:
   1) Did the court of appeals err in re-affirming its holding in *Burrows v. Texas Dept. Of Public Safety*, 740 S.W.2d 19, 20–21 (Tex. App.—Dallas 1987, no pet.) That the issue preclusion component of the collateral estoppel doctrine cannot arise from administrative hearings on license revocation proceedings based on an accused's refusal to submit to a blood-alcohol test?
   2) Did the court of appeals err in concluding that the record from the trial court did not show appellee was arrested where there are written findings from the justice court that appellee was arrested on the date alleged in the information and a police officer testified as to when he decided to arrest appellee?

for review.[1] Appellee contends the Court of Appeals erred in re-affirming the holding in *Burrows v. Texas Dept. of Public Safety*, 740 S.W.2d 19, 20–21 (Tex.App.—Dallas 1987, no pet.). The Court of Appeals relied on *Burrows* to hold collateral estoppel could not arise from an administrative proceeding. *State v. Brabson*, 899 S.W.2d 741, 745 (Tex. App.—Dallas 1995).

When dealing with this issue, it is important to remember the applicability of collateral estoppel does not depend on the mere "label" of the proceeding. Rather, we look to determine if the proceeding was conducted in a judicial capacity. In *Ex parte Tarver*, 725 S.W.2d 195, 199 (Tex.Cr.App.1986), we held:

> ... When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.

3) Under the standard that a fact-finder may accept or reject all, part, or none of a witness's testimony, did the court of appeals err in nonetheless basing its opinion in part on the perceived truthfulness of a police officer's "uncontroverted" testimony?

The majority offers no reason for ignoring the grounds for review. The majority goes so far as to set out the first ground of review in footnote one of their opinion, but then fails to address it. Instead of reaching the grounds upon which review was granted, the majority raises several issues of its own making. This is done because the author of the lead opinion, Judge McCormick, dissented in *Ex parte Tarver*, 725 S.W.2d 195 (Tex.Cr.App.1986), which along with *State v. Aguilar*, 947 S.W.2d 257 (Tex.Cr.App.1997), control the instant case. *See, infra.* Therefore, to avoid *stare decisis*, Judge McCormick avoids the true issue and creates an argument out of thin air. There is no greater testament to judicial activism than when a judge takes a case, that is clearly dictated by prior case law, and conjures up an issue that neither party has raised or argued.

The parties who appear before this Court have every right to believe their issues will be resolved in a fair and impartial manner. Making decisions in this manner is the sole source of our credibility. When a majority of this Court reaches out to resolve issues not raised by the parties, the majority acts as partisan advocates, not as impartial jurists. *Anson v. State*, 959 S.W.2d 203, 208 n. 2 (Tex.Cr.App.1997) (BAIRD and Overstreet, JJ., dissenting).

*Tarver*, 725 S.W.2d at 199 (*citing, United States v. Utah Construction and Mining Company*, 384 U.S. 394, 421–422, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966).). *See also, State v. Groves*, 837 S.W.2d 103 (Tex.Cr.App.1992).

Recently, in *State v. Aguilar*, 947 S.W.2d 257 (Tex.Cr.App.1997), this Court considered the issue presented in the instant case, namely whether an administrative license revocation proceeding can have collateral estoppel affect in a subsequent criminal proceeding. *Id.*, 947 S.W.2d at 258. In *Aguilar*, a *majority* of the Court followed the rationale of *Ashe* and *Tarver* and held an administrative hearing could have collateral estoppel effect on a later criminal proceeding. *Id.*, 947 S.W.2d at 259 ("Importantly, the collateral estoppel protection—given effect through the double jeopardy clause—may have application even if one of the proceedings under analysis is labeled 'civil' or 'administrative.' ").[2]

Because *Tarver* and *Aguilar* clearly hold the determination of a factual issue at an administrative hearing may be used to collaterally estop the State in a subsequent criminal proceeding, the Court of Appeals' reliance on *Burrows* was misplaced. Consequently, the majority errs in not addressing the grounds for review and disavowing the holding in *Burrows*.

**2.** It is interesting to note that three of the judges who comprised the majority in *Aguilar*, Price, Holland and Womack, now join the lead opinion which holds the complete opposite. *Ante*, at 496 ("Therefore, collateral estoppel principles do not preclude the Dallas County District Attorney from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution."). Indeed, Judge McCormick's lead opinion fails to even mention the existence of *Aguilar*. Yet Judges Price and Holland offer no explanation for their radical change of position. And Judge Womack, who offers a concurring opinion, does not explain his change of position. Certainly the bench and bar deserve better. *Aguilar* was decided but eight months ago yet today it is *sub silento* overruled without any explanation. This is result-oriented jurisprudence at its worst!

**3.** The majority's analysis is as follows:
The first question we address is whether the parties in the administrative proceeding and the criminal prosecution are the same. The

## II.

Initially, the majority holds, "[t]he Texas Department of Public Safety and the Dallas County District Attorney are not the same parties." *Ante* at 496. This holding is based upon a confusion which leads the majority to intertwine *criminal* and *civil* collateral estoppel.[3] When this confusion is exposed, one can see that the majority's holding is contradicted by a wealth of authority from this Court and the United States Supreme Court.

### A.

It is important to note that the United States Supreme Court separates collateral estoppel into two distinct categories, *criminal* and *civil*. *Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980). The doctrine of collateral estoppel has its roots in civil law, using the property right of the parties in determining privity. However, because criminal collateral estoppel emanates from the Double Jeopardy Clause, the focus is not on the parties but rather the sovereign against the defendant. If it were not the sovereign attempting to relitigate the issues, the roots of criminal collateral estoppel would not be in double jeopardy.

Double jeopardy provides that no sovereign can make a person "subject for the same offense to be twice put in jeopardy of life or limb." U.S.C.A. Const. Amend. 5. However,

party that sought to revoke appellee's driver's license in the administrative proceeding was the Texas Department of Public Safety. See Article 6701l–5, Section 2(f). The Texas Department of Public Safety and the Dallas County District Attorney are not the same parties. Therefore, collateral estoppel principles do not preclude the Dallas County Attorney from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution.
*Ante*, at 496.
The holding is restated to assist the reader in this evaluation. As the reader can see, the majority's holding is devoid of any analysis or reasoning. In his concurrence, Judge Womack recognizes the sparsity of Judge McCormick's analysis and attempts to ride to the rescue and to give the lead opinion some feeling of logic. However, Judge Womack's opinion also fails to appreciate the difference between *criminal* and *civil* collateral estoppel.

sovereigns are not barred by the Fifth amendment from seeking a conviction already tried by another sovereign. For instance, a federal conviction does not bar a state conviction, a foreign state conviction does not bar a federal conviction, and a state conviction does not bar another state's conviction. This is the doctrine of "Dual Sovereignty."

### B.

"The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government." *Heath v. Alabama*, 474 U.S. 82, 87–89, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). The same conduct can violate the laws of two distinct sovereigns and, therefore, be considered two separate offenses. The "crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns." *Id.*

... This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power. Thus, the Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own "inherent sovereignty," not from the Federal Government ... The States are no less sovereign with respect to each other than they are with respect to the Federal Government. *Their powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment.*

*Id.*, at 88–89, 106 S.Ct. at 437–438.[4] The Court further stated: "In those instances where the Court has found the dual sovereignty doctrine inapplicable, it has done so because the *two prosecuting entities did not*

derive their powers to prosecute from independent sources of authority." *Id.*, at 90, 106 S.Ct. at 438.

Therefore, in the context of *criminal* collateral estoppel, for the majority's logic to hold water, the Department of Public Safety (DPS) and the Dallas County District Attorney would have to be two separate sovereigns.

### C.

Both the DPS and the district and county attorneys garner their prosecutorial strength from the Constitution and statutes of the State of Texas.[5] Therefore, they are entities "emanating from the same sovereignty." *Heath*, 474 U.S. at 90, 106 S.Ct. at 438 (1985) (*citing, Puerto Rico v. Shell Co.*, 302 U.S. 253, 264, 58 S.Ct. 167, 172, 82 L.Ed. 235 (1937)). As entities of the same sovereign they derive their power from the same "organic law." *Ibid.*

In *Waller v. Florida*, 397 U.S. 387, 391–392, 90 S.Ct. 1184, 1187, 25 L.Ed.2d 435 (1970), the State of Florida attempted to prosecute an individual under State law after he had been prosecuted for the same conduct in a municipal proceeding. Florida argued the subsequent prosecution was permissible because the municipality and the State were separate sovereigns. The Court considered whether *two courts within one State* could place a defendant on trial for the same alleged crime. *Id.*, at 389–391, 90 S.Ct. at 1186. The Supreme Court rejected this theory, finding the judicial power from each entity emanated from the same source.

... Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as *subordinate* governmental entities created by the State to assist in the carrying out of state governmental functions.

---

4. All emphasis is supplied unless otherwise indicated.

5. Government Code § 411.002(a) provides:
The Department of Public Safety of the State of Texas is an agency of the state to enforce the laws protecting the public safety and provide for the prevention and detection of crime.
The Texas Code of Criminal Procedure art. 2.01 provides: "Each district attorney shall represent the State in all criminal cases...."

*Id.,* at 392, 90 S.Ct. at 1187 (*citing, Reynolds v. Sims,* 377 U.S. 533, 575, 84 S.Ct. 1362, 1388, 12 L.Ed.2d 506 (1964)). The Court has further noted "any power [the municipality] has to define and punish crimes exists only because such power has been granted by the State; the power derives from the source of [its] creation." *United States v. Wheeler,* 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978)(citing *Mount Pleasant v. Beckwith,* 100 U.S. 514, 524, 25 L.Ed. 699).

According to the tenets of dual sovereignty, each sovereign derives its power from a different constitutional source. *Abbate v. United States,* 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959). Almost sixty years ago the United States Supreme Court in *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), held:

> ... There is privity between officers of the same *government* so that a judgment in a suit between a party and a representative of the [government] is res judicata in relitigation of the same issue between that party and another officer of the government. The crucial point is whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication of the issue in controversy.

*Id.,* 310 U.S. at 402–403, 60 S.Ct. at 917 (citations omitted).

### D.

The case law is abundantly clear, the Texas Department of Public Safety (DPS) is not a sovereign, in and of itself. Clearly, the Department of Public Safety comes under the umbrella of the sovereign State of Texas. *Texas Dept. of Public Safety v. Perez,* 905 S.W.2d 695 (Tex.App.—Houston [14th Dist.] 1995); *City of Beverly Hills v. Guevara,* 886 S.W.2d 833, 837 (Tex.App.—Waco 1994); and, *Texas Dept. of Public Safety v. Martin,* 882 S.W.2d 476, 483 (Tex.App.—Beaumont

1994). In operating as a law enforcement agency, the DPS is performing a governmental function. *Ellis v. City of West University Place,* 171 S.W.2d 178 (Tex.Civ.App.—Galveston 1943); *Cronen v. Nix,* 611 S.W.2d 651, 653 (Tex.Civ.App.—Houston [1st Dist.] 1980); *and, City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994). Therefore, the DPS represents the State of Texas in its actions and is treated as the State of Texas in its defense.

Indeed, the Texas Department of Public Safety has been established by statute as an agency of this State. Tex. Gov't Code Ann. § 411.002(a) (Vernon 1990). *See,* n. 5, *supra.* And with regard to lawsuits, an agency of the State is generally treated as the equivalent of the State itself. *See, Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976); *Texas Department of Public Safety v. Richardson,* 384 S.W.2d 128, 130 (Tex.1964) (DPS is officer of this State); *and, Texas Dept. of Public Safety v. Casselman,* 417 S.W.2d 146, 149 (Tex.1967).[6]

### E.

The Supreme Court held: "collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. *Ashe* requires an intimate analysis of the issue to see if the issue is the same as the defendant seeks to foreclose from future prosecution. This inquiry into the issue must be done in a practical frame work and viewed with all the circumstances of the proceeding. *Ibid.*

*Ashe* did not address the "parties argument" because that is not the issue in a *criminal* collateral estoppel. It is axiomatic in *criminal* collateral estoppel that the *same* party is seeking re-litigation. Taken in light of *Waller, supra,* it is clear the individual entities of the State do not immunize the State from criminal collateral estoppel.

---

**6.** In the instant case, it could not be more clear that the DPS and the Dallas County District Attorney both represent the State of Texas. Attached as exhibits A and B are the findings of the justice court and the information, respectively. Both documents are entitled the State of Texas vs. William Harold Brabson, III. Although the Petition for Administrative Hearing that was filed in the justice court is titled "Texas Department of Public Safety v. Brabson," it reads: "Now comes the State of Texas, acting by and through James R. Wilson Director of the Texas Department of Public Safety...." *See,* Exhibit C.

There is no doubt the Supreme Court had this in mind when they handed down *Ashe* and *Waller* on the same day. The Court went on to say: "... [a]ny test more technically restrictive, would of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings ..." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

Additionally, this Court recognizes *criminal* collateral estoppel applies to the sovereign:

> ... To state the distinction in more prosaic terms, the traditional bar of double jeopardy prohibits the prosecution of the crime itself, whereas collateral estoppel, in a more modest fashion, *simply forbids the government* from relitigating certain facts in order to establish the fact of the crime.

*Dedrick v. State*, 623 S.W.2d 332, 336 (Tex. Cr.App.1981) (citing *United States v. Mock*, 604 F.2d 341 (5th Cir.1979). *Ashe* mandates only two inquires in criminal collateral estoppel:

> First, what facts were necessarily determined in the first law suit? Second, has *the government* in a subsequent trial tried to relitigate facts necessarily established against it in the first trial?

*Id.*, at 336. Making it abundantly clear, *criminal* collateral estoppel bars the reintroduction or relitigation of fact already established against *the sovereign*. *Ibid.*; *see also*, *Ladner v. State*, 780 S.W.2d 247, 251–252 (Tex.Cr.App.1989) (citing *Ashe v. Swenson*, 397 U.S. at 443–446, 90 S.Ct. at 1194–1196) (the doctrine of collateral estoppel prohibits *the State* from relitigating issues); *Ex parte Byrd*, 752 S.W.2d 559, 562 (Tex.Cr.App.1988) (*the State* is thereafter precluded by the doctrine of collateral estoppel); *Ex parte Tarver*, 725 S.W.2d 195, 198 (Tex.Cr.App.1986) (collateral estoppel prevents *the State* from relitigating); *Ex parte Mathes*, 830 S.W.2d 596, 598 (Tex.Cr.App.1992) (collateral estoppel precludes *the State* from relitigating); *Neaves v. State*, 767 S.W.2d 784, 786 (Tex.Cr. App.1989) (applying collateral estoppel only where *the State* litigated the issues); *Padgett v. State*, 717 S.W.2d 55,57 (Tex.Cr.App.1986)

(collateral estoppel precludes *the government* from relitigating issues); *and, United States v. Nelson*, 599 F.2d 714, 716 (5th Cir.1979) (collateral estoppel forbids *the government* from relitigating certain facts).

And, to be directly on point, we have previously held the DPS and a district or county attorney are the same sovereign. In *Tharp v. State*, 935 S.W.2d 157 (Tex.Cr.App.1996), we considered a double jeopardy claim that the suspension of a driver's license by the DPS was punishment which jeopardy barred a criminal DWI prosecution. We reached the merits of the argument and held there was no jeopardy bar because a driver's license suspension does not constitute punishment. Similarly, in *Voisinet v. State*, 935 S.W.2d 424 (Tex.Cr.App.1996), we held the statute providing for administrative license revocation and the statute governing the offense of driving while intoxicated defined the same offense for double jeopardy purposes. *See also*, *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (Montana Department of Revenue was the same sovereign as the criminal prosecutor for jeopardy purposes.); *and, Stennett v. State*, 941 S.W.2d 914 (Tex.Cr.App.1996) (Texas Comptroller of Public Accounts and the Harris County District Attorney were same sovereign for jeopardy purposes.).

Judge Womack offers a concurring opinion in disagreement with this position. Interestingly, he cites only civil cases for support. When forced to recognize that the cases discussed above hold the DPS and the prosecutor are the same sovereign, he suggests these holdings are not controlling because the word "party" is not mentioned in these opinions. *Ante*, at 498. What Judge Womack fails to recognize is that every opinion necessarily makes many implicit holdings. For example, most opinions do not contain the word "jurisdiction." Would Judge Womack, therefore, argue that because the word "jurisdiction" was not in the opinion, the court lacked jurisdiction?[7] A truer reading

---

**7.** Indeed, if the majority and the concurrence are correct, why is there not some reference to the parties issue in any of our cases addressing crim-

inal collateral estoppel? *See, State v. Groves*, 837 S.W.2d 103 (Tex.Cr.App.1992); *Ex parte Mathes*, 830 S.W.2d 596 (Tex.Cr.App.1992); *Ladner v.*

of those cases would reveal that their holdings could not have been reached had we not implicitly held the DPS and the prosecutor were the same sovereign. Had we held otherwise, we would not have addressed the issues of whether the offenses were the same, *Voisinet, supra,* or whether the driver's license suspension was punishment, *Tharp, supra.* Because the prosecution emanated from the same sovereign, we did not need to address the issue of parties, nor for that matter, the issue of dual sovereignty.[8]

### F.

In conclusion, it is clear the majority confuses *criminal* and *civil* collateral estoppel and in doing so either ignores or fails to grasp the holdings of the cases from both the United States Supreme Court and this Court which dictate a different holding.[9]

### III.

Recognizing the absurdity of the not-the-same-party argument, the majority quickly abandons that position and holds the issue of probable cause was not properly before the administrative agency.

First, it is important to remember the State did *not* appeal the decision of the justice court. If the State believed the resolution of the probable cause issue was erroneous, the remedy was to appeal that determination. *See,* Tex.Rev.Civ. Stat. Ann. art. 6687b, § 22(e). But, the State chose not to appeal and the majority errs in advancing the argument for the State.

Nevertheless, there is precedent from this Court which holds the probable cause issue was properly before the justice court. In *Neaves v. State,* 767 S.W.2d 784 (Tex.Cr.App. 1989), we found the Legislature required the administrative judge to determine probable cause because it was unfair to suspend one's driver's license when there was never probable cause to arrest for DWI. We stated:

> ... We can think of no other explanation for this [probable cause] requirement but that the legislature believed it would be untenable to penalize a D.W.I. suspect who refuses to submit a specimen under circumstances *that could not constitutionally justify his arrest for that offense.*

*Id.,* 767 S.W.2d at 786.

Again, in *State v. Groves,* 837 S.W.2d 103, we held an administrative license revocation can have a collateral estoppel effect on the subsequent criminal trial. However, we could not decide whether that particular administrative hearing had collateral estoppel effect because there was "nothing in the record to indicate that the issue of probable cause to arrest the appellee had been previously litigated (as there is nothing indicating that the justice court concluded that there was an absence of probable cause), there was no collateral estoppel bar to litigating that issue in the *instant* cause." *Id.,* at 106 (Emphasis added.).[10]

Additionally, as noted above, in *Voisinet, supra,* this Court held the two offense were the same for jeopardy purposes. To be the same offense, the elements and, therefore, the issues are properly before both the trier

---

*State,* 780 S.W.2d 247 (Tex.Cr.App.1989); *Sorola v. State,* 769 S.W.2d 920 (Tex.Cr.App.1989); *Garcia v. State,* 768 S.W.2d 726 (Tex.Cr.App.1987); *Ex parte Byrd,* 752 S.W.2d 559 (Tex.Cr.App. 1988); *State ex rel. Curry v. Gray,* 726 S.W.2d 125 (Tex.Cr.App.1987); *Ex parte Tarver,* 725 S.W.2d 195 (Tex.Cr.App.1986); *Disheroon v. State,* 687 S.W.2d 332 (Tex.Cr.App.1985); *Meeks v. State,* 653 S.W.2d 6 (Tex.Cr.App.1983); *Ex parte Robinson,* 641 S.W.2d 552 (Tex.Cr.App. 1982); and, *Dedrick v. State,* 623 S.W.2d 332 (Tex.Cr.App.1981).

8. Judge Womack argues there is no such mutuality between the DPS and the local prosecutor. However, collateral estoppel does not require mutuality of parties. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58

L.Ed.2d 552,(1979); and, *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971).

9. Interestingly, if a defendant is acquitted of the underlying DWI charge, any license suspension is rescinded; in effect, a "reverse" collateral estoppel effect by the DPS, recognizing the validity of the other court's findings. Tex. Transp. Code Ann. § 524.015.

10. Judge McCormick, who voted for the opinions in *Groves* and *Neaves,* now declares them to be pure dicta. *Ante* at 497. Such a declaration is utter nonsense. For a judge on this Court to create issues of his own choosing and in resolving those issues reduce to dicta two opinions for which he voted is the height of intellectual dishonesty.

of fact in the suspension hearing and the subsequent criminal proceeding.

## IV.

Finally, the majority holds the issue of probable cause is not an issue of ultimate fact. *Ante* at 496. The majority fails to recognize the doctrine of collateral estoppel is not limited to issues of ultimate fact but applies to evidentiary facts as well. *Dedrick v. State,* 623 S.W.2d 332, 336 (Tex.Cr.App. 1981); *Wingate v. Wainwright,* 464 F.2d 209, 212–213 (5th Cir.1972); *Blackburn v. Cross* 510 F.2d 1014, 1018–1019 (5th Cir.1975). And, probable cause to arrest is both an ultimate fact and an evidentiary fact. Probable cause is an issue of ultimate fact in a motion to suppress hearing and an evidentiary fact in a DWI prosecution. Tex.Code Crim. Proc. Ann. art. 38.23. To hold otherwise is to show a complete ignorance of our law relating to pre-trial hearings, and our search and seizure jurisprudence.

## V.

The majority has taken leave of its senses in order to rule for the State. Such result-oriented jurisprudence is odious in all respects and a disservice to the people of Texas. Accordingly, I dissent.

## APPENDIX  A
### JD92-00612-K

| | |
|---|---|
| THE STATE OF TEXAS | § IN THE JUSTICE OF THE PEACE |
| | § |
| v. | § COURT, PRECINCT 8, PLACE 2, |
| | § |
| WILLIAM HAROLD BRABSON III | § OF DALLAS COUNTY, TEXAS |

### FINDINGS OF FACT

On the 26th day of January, 1993, came on for hearing the above styled and numbered cause and, based on the pleadings, evidence, and argument of counsel, the Court made the following findings of fact:

1. The Court finds that the defendant was issued a Class C License No. 05476111 by the Texas Department of Public Safety;

2. The Court finds that the defendant was placed under arrest on August 9, 1992;

3. The Court finds that the defendant was offered an opportunity to give a specimen of blood;

4. The Court finds the defendant refused to give such specimen upon request of the police officer;

5. The Court finds that the arresting officer did not have probable cause to arrest the defendant.

SIGNED on this the 12th day of August, 1993.

_____
JUDGE PRESIDING

FINDING OF FACT -- Solo
/cr/brab-fnd.fct

# APPENDIX B

**DEFENDANT** BRABSON; WILLIAM HAROLD II W/M 05/24/47 **CHARGE** DWI

**ADDRESS** 4838 ROSWELL.DALLAS **LOCATION** 050

**FILING AGENCY** DPD **DATE FILED** 08-13-92 **COURT** #5

**COMPLAINANT** MERRILL L BAXLEY M892-56503 F

**C/C** VT#81847

**SERVICE NO.** 649999A **ARREST NO.** 92059435 **I.D. NO.**

## AFFIDAVIT

In the Name and by the Authority of the State of Texas.

PERSONALLY APPEARED before me the undersigned authority this affiant, who after being by me duly sworn,

deposes and says your Affiant has good reason to believe and does believe that one _____
WILLIAM HAROLD BRABSON II

herein Defendant, heretofore, on or about the 9TH day of AUGUST A.D., 19 92

in the County of Dallas and State of Texas, did unlawfully

then and there drive and operate a motor vehicle in a public
place in Dallas County, Texas, to-wit: a street and highway,
while intoxicated, in that the defendant did not have the normal
use of his mental and physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, and a combination of 1
or more of those substances into defendant's body,

Against the peace and dignity of the state.,

Sworn to and subscribed before me this the
14 day of AUGUST A.D., 19 92

_____
Assistant Criminal District Attorney of
Dallas County, Texas

_____
Affiant.

1'

# APPENDIX C

DIC-25 (Rev. 9/91)

**PETITION FOR ADMINISTRATIVE HEARING**
Article 6687b, V.T.C.S., Section 22
and
Article 6701 /-5, V.T.C.S.

| | | |
|---|---|---|
| **TEXAS DEPARTMENT OF PUBLIC SAFETY** | I | DOCKET NO. _____ |
| vs | I | BEFORE THE JUDGE OF THE _____ JUSTICE COURT, |
| WILLIAM HAROLD BRABSON III | I | PRECINCT NO. 8, PLACE 2 , COUNTY, TEXAS. |
| | | DALLAS |

TO THE HONORABLE JUDGE:

NOW comes the State of Texas, acting by and through James R.Wilson, Director of the Texas Department of Public Safety, hereinafter called Plaintiff, and files this its first original petition herein:

COMPLAINING OF _____ WILLIAM HAROLD BRABSON III _____, hereinafter called Defendant, who resides in _____ DALLAS _____ DALLAS _____ County, Texas, and for its allegations and cause of action against said defendant will allege and state the following matters and facts, to-wit:

THAT, defendant was issued _____ CLASS C _____ License No. ___ 05476111 ___ by the Texas Department of Public Safety:

THAT, defendant on or about _____ AUGUST 9, 1992 _____, was placed under arrest.

THAT, probable cause existed that defendant was driving or in actual physical control of a motor vehicle on the highways or upon a public beach in this state while intoxicated.

THAT, defendant was placed under arrest by an officer and was offered an opportunity to give a specimen of _____ BLOOD _____.

THAT, defendant refused to give such specimen upon request of the officer.

WHEREFORE, premises considered, plaintiff prays the Judge for an affirmative finding in his favor and judgment authorizing him to suspend or deny defendant's aforementioned license and defendant's privilege to operate a motor vehicle in the State of Texas for a period of 90 days.

_James R. Wilson_
James R. Wilson, Director
Texas Department of Public Safety

BE IT REMEMBERED that on the _26th_ day of _January_, 19_93_ came on for hearing and was heard the above entitled and numbered cause.

**AFFIRMATIVE FINDING**

WHEREUPON the Judge is of the opinion and so finds that the law and the facts are with the plaintiff. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiff do have and recover of said defendant an AFFIRMATIVE FINDING, as prayed for in the petition, and that defendant's _____ License No. _____ and driving privileges be suspended (denied) for a period of ninety (90) days as provided in Article 6687b, V.T.C.S., Section 22, and Article 6701 /-5, V.T.C.S.

_____ , JUDGE
_____ COURT
_____ COUNTY,
STATE OF TEXAS

**NEGATIVE FINDING**

WHEREUPON the Judge is of the opinion and so finds that the law and the facts are with the defendant. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendant do have and recover of said plaintiff a NEGATIVE FINDING, and that neither defendant's driver's license nor driving privileges shall be suspended (denied), based upon the above petition.

_____ , JUDGE
_J.P. B-2_ COURT
_Dallas_ COUNTY,
STATE OF TEXAS

*CONCURRING OPINION TO DENIAL OF APPELLEE'S MOTION FOR REHEARING.*

McCORMICK, Presiding Judge, concurring.

I concur to the denial of appellee's motion for rehearing. I write separately to respond to Judge Meyers' dissenting opinion to the denial of appellee's motion for rehearing ("the dissent").

This dissent claims the Court's opinion on original submission "rests in large part on its resolution of an issue" that was "not presented as a ground upon which review was granted by this Court." See *State v. Brabson*, 976 S.W.2d at 203 (Meyers, J., dissenting) (op. on denial of reh'g). Because of this, the dissent claims the parties have not had an opportunity to brief and argue the "parties" issue.

I respectfully disagree. This Court granted discretionary review to decide whether collateral estoppel effect should be given in a subsequent criminal prosecution to findings made in a civil license revocation administrative proceeding. See *Brabson*, 976 S.W.2d at 190 fn 1 (Baird, J., dissenting) (op. on orig. sub'm) (setting out verbatim ground one of appellee's petition for discretionary review). The Court's opinion on original submission appropriately addresses all questions of law "predicate to an intelligent resolution" of this question on which we granted discretionary review. See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 1715 fn. 6, 64 L.Ed.2d 333 (1980) (discretionary review courts must address subsidiary questions of law "predicate to an intelligent resolution" of the question upon which discretionary review is granted); *Vance v. Terrazas*, 444 U.S. 252, 100 S.Ct. 540, 544 fn. 5, 62 L.Ed.2d 461 (1980) (same plus discretionary review courts may in appropriate circumstances address questions of law not presented in petition for discretionary review). And, given the common-law elements of collateral estoppel, the

parties have had an opportunity to brief the "parties" issue.

The dissent also revisits the merits of the Court's disposition on original submission of the "parties" issue. Relying solely on the caption of the pleadings and other papers filed in the civil license revocation administrative proceedings and the subsequent criminal prosecution, the dissent claims the Department of Public Safety and the Dallas County District Attorney are the same parties for collateral estoppel purposes. However, I respectfully submit this position exalts form over substance and fails to take into account the various public policy concerns for deciding the Department of Public Safety and the Dallas County District Attorney are not the same parties for collateral estoppel purposes in cases like this.

Various other courts that have considered the "parties" issue in cases like this have not uniformly held one way or the other on the issue. The dissent cites out-of-state cases that would support holding the Department of Public Safety and the Dallas County District Attorney are the same parties for collateral estoppel purposes. See *Brabson*, 976 S.W.2d at 204–206 (Meyers, J., dissenting) (op. on denial of reh'g). The dissent also cites other out-of-state cases that would support a contrary holding. See *id.*

There is considerable weight of authority from other jurisdictions that support the Court's holding on original submission on the "parties" issue. See *id.*; see also cases collected in Annotation, *Doctrine of Res Judicata or Collateral Estoppel As Barring Relitigation in State Criminal Proceedings of Issues Previously Decided in Administrative Proceedings*, 30 A.L.R.4th 856, 860–64 (1996). It cannot be said the Court's holding on original submission on the "parties" issue represents a distinct minority view among the various jurisdictions that have considered the issue.[1]

---

1. In addition, were we to accept the argument that collateral estoppel applies in cases like this, then we would also have to decide this doctrine precludes defendants from relitigating some issues in subsequent criminal prosecutions that were decided adversely to them in prior administrative proceedings. For example, in this case had the Department of Public Safety won on the

issue of probable cause for appellee's arrest in the civil license revocation administrative proceeding, then appellee could not relitigate this issue against the Dallas County District Attorney in the subsequent criminal prosecution. I have yet to find anyone who would accept this proposition. However, there is no reason why in cases

At least one case has labeled the Court's analysis on original submission of the "parties" issue as being "too simplistic." See 30 A.L.R.4th at 858, fn. 5 (citing *People v. Sims*, 32 Cal.3d 468, 186 Cal.Rptr. 77, 651 P.2d 321 (1982)). This, among other things, is another example of the judiciary, which it has been prone to do for some years now, making a simple question more complicated than it really is. With all respect due the California court in *Sims*, the analysis in cases like this of the "parties" question is really that simple.

The simple fact of the matter is that no one, not even the dissenting opinions in this case, claims the Dallas County District Attorney had an opportunity to litigate the probable cause issue in the civil license revocation administrative proceeding. This in large part should be dispositive of the collateral estoppel question since that doctrine precludes relitigation of issues that a party has had an opportunity to litigate. This is not to mention the public policy concerns that should be factored into the collateral estoppel analysis which none of the dissenting opinions in this case do. See 30 A.L.R.4th at 860–64 (practical public policy considerations require that most questions such as "reasonable cause to arrest" are more appropriately addressed in the criminal justice system).

Finally, the dissent cites Justice Cohen's dissenting opinion in *Reynolds v. State* which contains the most thoughtful and most constructive criticism of this Court's decision on original submission on the "parties" issue. See *Reynolds v. State*, 967 S.W.2d 493, 496–97 (Tex.App.—Houston [1st Dist.] 1998, no pet. history) (Cohen, J., dissenting). However, I must respectfully disagree with Justice Cohen's position.

Justice Cohen's dissent claims, as a matter of state law, that the Department of Public Safety and the Dallas County District Attorney are not parties at all, but instead are two governmental entities in the same branch of government representing the same party or client which is the people of the State of Texas. See *Reynolds*, 967 S.W.2d at 497 (Cohen, J., dissenting) (Dallas County District Attorney is a lawyer, not a party). This is analogous to the same private client or

like this collateral estoppel should be a one-way

party being represented by a private lawyer seeking to relitigate in a subsequent proceeding the same issue that was resolved adversely to the private client in a prior proceeding when the client was represented by another lawyer. Of course when a fact issue is resolved against a private citizen represented by lawyer A in proceeding 1, that same private citizen cannot relitigate the same fact issue in proceeding 2 on the basis that the private citizen is now represented by lawyer B.

While there is some validity to the position that the Department of Public Safety and the Dallas County District Attorney represent the same client which is the citizens of this State, these governmental entities should nevertheless be considered separate parties for collateral estoppel purposes based primarily on practical public policy considerations. In addition, the citizens of this State have no power, as a private litigant does, to control the course of the litigation by the lawyers representing these governmental entities. These lawyers exercise governmental powers in the public interest. They do not represent any particular private citizen or private interest as does a private lawyer. The reader will not find private citizens sitting at the same table as the District Attorney or the lawyer representing the Department of Public Safety.

And, sometimes the rules that apply to private lawyers representing private citizens do not apply to public lawyers exercising governmental powers in the public interest. For example, it has been held in a somewhat different but related context that "when a unit of government is exercising its governmental powers, it is not subject to estoppel." See *Hardman v. State*, 614 S.W.2d 123, 128 (Tex.Cr.App.1981); see also *State v. Durham*, 860 S.W.2d 63, 67–68 (Tex.1993) (State in its sovereign capacity, unlike ordinary litigants, is not subject to defense of estoppel).

Justice Cohen's dissent also claims, as a matter of federal constitutional law, that the Court's holding on original submission on the "parties" issue is questionable under *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 1188–

street benefitting only criminal defendants.

89, 25 L.Ed.2d 435 (1970). See *Reynolds,* 967 S.W.2d at 497 (Cohen, J., dissenting). *Waller* held, as a matter of federal constitutional law, that a defendant could not under the "dual sovereignty" doctrine be criminally prosecuted twice "for the same alleged crime" in a municipal and then in a state court. See *Waller,* 90 S.Ct. at 1186–88.

However, *Waller* has no application to the case at bar. The Court's opinion on original submission pointed out that this case does not implicate federal constitutional double jeopardy principles or the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy." See *Brabson,* 976 S.W.2d at 183 fn 2 (op. on orig. subm'n). This case does not involve a situation where a defendant is being criminally prosecuted twice for the same offense.[2]

This is the main reason this case does not implicate the Supreme Court's federal double jeopardy holding in *Ashe v. Swenson* and why our Legislature can expressly provide in the current law[3] that the determination of the administrative judge "does not preclude litigation of the same or similar facts in a criminal prosecution." See *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) (a "successive criminal prosecution" case holding the rule of collateral estoppel as "embodied in the Fifth Amendment guarantee against double jeopardy" may bar a later criminal prosecution for a separate offense where the Government has lost an earlier criminal prosecution involving the same facts);[4] see also *State v. Ratliff,* 304 Or. 254, 744 P.2d 247, 248 (1987) (in cases like this there is no constitutional basis for a double jeopardy challenge because no criminal sanctions are imposed as a consequence of the first proceeding); *State v. MacLean,* 560 A.2d 1088 (Me.1989); *State v. Warfield,* 854 S.W.2d 9, 11–12 (Mo.Ct.App.1993). This discussion addresses the concerns expressed on page eight of Judge Meyers' dissent on

rehearing and makes inapplicable the discussion contained in Judge Baird's dissent on original submission.

With these comments, I concur to the denial of appellee's motion for rehearing.

KELLER, J., joins this concurring opinion.

BAIRD, Judge, dissenting to denial of appellee's motion for rehearing.

The holding on original submission, namely that the State is not the State, is patently absurd. Nevertheless, that holding garnered five votes, the fifth of which was Judge Tom Price. Today, Judge Price recognizes the absurdity of that holding and states that he should have joined Judge Mansfield and concurred only in the judgment. *Post* at 206 (Price dissenting to denial of appellee's motion for rehearing). Therefore, only a plurality of this Court (McCormick, Keller, Holland, and Womack, JJ.) favors the holding on original submission. However, that plurality holding stands in direct conflict with *State v. Aguilar,* where a majority held an administrative license revocation (ALR) proceeding can have collateral estoppel affect in a later criminal proceeding. 947 S.W.2d 257, 259 (Tex.Cr.App.1997). This conflict was made known on original submission, *Ante* at 190 (Baird, J., dissenting), but the majority failed to distinguish, mention or even cite *Aguilar.*

This Court should issue opinions which clarify the law, not confuse it. What is the trial judge to do when defense counsel cites *Aguilar* in support of his motion to suppress and the State counters that argument by citing *Brabson?*

The only reason to deny rehearing is to permit the State to win. As I noted in my original dissent, this case is a model of result oriented jurisprudence. *Ante,* at 191. We should grant rehearing, withdraw our earlier

---

**2.** The license revocation administrative proceeding was a civil proceeding, not a criminal prosecution.

**3.** See *Brabson,* 976 S.W.2d at 185 fn 6 (op. on orig. subm'n); Texas Transportation Code, Section 724.048(a)(3).

**4.** The lynchpin of *Ashe* has been undermined or overruled *sub silentio* by the Supreme Court's

more recent decision in *U.S. v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997) (jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict of not guilty). See also *Ashe,* 397 U.S. at 460–70, 90 S.Ct. 1189 (Burger, C.J., dissenting).

opinion and, consistent with *Aguilar*, hold that an ALR proceeding can have collateral estoppel affect. · Because a majority of this Court fails in its duty to follow established precedent and respect the rule of law, I dissent.

MEYERS, Judge, dissent to denial of appellee's motion for rehearing.

The majority's opinion on original submission rests in large part on its resolution of an issue not discussed by the appellate court below, not raised or argued by the parties in their briefs before that court or before this Court, and not presented as a ground upon which review was granted by this Court. Appellee requests rehearing so that he may have the opportunity to brief and argue the issue. Before rendering a decision on an issue of consequence, this Court ought at least allow the parties an opportunity to present their most persuasive arguments and authority in support of their respective positions on the issue. *Cf Whatley v. State*, 946 S.W.2d 73, 76 fn. 6 (Tex.Crim.App.1997)(declining to address issue not raised in brief before Court of Appeals and not urged in petition for discretionary review before this Court); *Theus v. State*, 863 S.W.2d 489, 491 (Tex.Crim.App.1993)(on remand by Court of Criminal Appeals to Court of Appeals for harm analysis, Court of Appeals is required to afford defendant opportunity to file brief on new issue). It seems the message to be taken from the Court's action in this case is that there is no longer any real reason for parties to present briefs and argue before this Court. Perhaps adversarial representation is no longer an important feature of our system. *See Ex parte McJunkins*, 954 S.W.2d 39 (Tex.Crim.App.1997)(majority of Court withdrew mandate and granted State's motion for rehearing in order to address question not raised by State in its motion for rehearing). In the belief that adversarial process remains, or ought to remain, an in-dispensable feature, I dissent to the majority's denial of rehearing.

On original submission the majority said:

The first question we address is whether the parties in the administrative proceeding and the criminal prosecution are the same. The party that sought to revoke appellee's driver's licence in the administrative proceeding was the Texas Department of Public Safety. See Article 6701*l*-5, Section 2(f). *The Texas Department of Public Safety and the Dallas County District Attorney are not the same parties.* Therefore, collateral estoppel principles do not preclude the Dallas County District Attorney from litigating the issue of probable cause for appellee's arrest at the suppression hearing in the criminal prosecution.

*State v. Brabson*, 976 S.W.2d 182, 184 (emphasis added).[1] The majority provided no authority for its conclusion that the Dallas County District Attorney and the Department of Public Safety are "parties," let alone "not the same parties."[2] The record provides some clue.

The information in the criminal prosecution reads *"In the Name and by the Authority of the State of Texas* now comes the Criminal District Attorney of Dallas County, State of Texas." The criminal case is styled, *"The State of Texas* vs William Brabson." The State's Announcement of Ready for Trial reads *"Now comes the State of Texas* in the above styled and numbered cause . . . ." The trial transcript reads "William Harold Brabson II vs *The State of Texas."* The State's Notice of Appeal reads *"The State of Texas comes before the Court* and gives the Court notice of its desire and intent to appeal the Court's order . . . *The State will prosecute* this appeal . . ." The State's Designation of Record on Appeals reads *"The State of Texas* files this Designation . . . ." The State's Designation requests, among other items, "The information filed by *the State of Texas."* Other filings in the trial court are styled

---

1. All emphasis throughout this opinion is added, unless otherwise indicated.

2. It would seem that a party to a criminal proceeding ought to know when it is in fact a party. But apparently the Dallas County District Attor-ney did not realize he was a party to the instant criminal proceeding, as he did not object on that basis to appellee's efforts to assert collateral estoppel, and he did not raise such issue before the Court of Appeals or before this Court.

"*The State of Texas* v. William Brabson III." The State's Brief before the Court of Appeals reflects the style of the case as, "*The State of Texas* vs William Harold Brabson, III", and begins, "*The State of Texas comes before the Court* and files this brief in support of its appeal ..." The State's Brief on Petition for Discretionary Review before this Court has a page entitled "List of Parties" showing the following:

1. *State of Texas, represented by Dallas County Assistant Criminal District Attorneys* Michael J. Sandlin, Kirk Lechtenburger, and Scott Bryant.

2. Defendant William Harold Brabson, III, represented by J. Stephen Cooper.

The body of the Brief begins, "Comes now the State of Texas, Appellant, through the Criminal District Attorney, and files its Brief...."

The Original Petition in the administrative proceeding, while styled "Texas Department of Public Safety vs. William Harold Brabson III," reads further "*Now comes the State of Texas,* acting by and through James R. Wilson, Director of the Texas Department of Public Safety, Plaintiff, and files this its first original petition...." The administrative judge's Findings of Fact are styled "*The State of Texas* v. William Harold Brabson III."

The Court of Appeals' opinion begins "*The State appeals* the county criminal court's granting Brabson's motion...." That Court further wrote, "The State instituted criminal proceeding [sic] against Brabson...." Nowhere does the Court of Appeals' opinion mention the District Attorney.

The record is saturated with evidence that the State of Texas is the real party here. The majority did not address the record evidence. The majority's holding that the

Dallas County District Attorney is a "party" to this criminal prosecution, rather than the State of Texas, was viewed as so beyond the pale by one judge on a court of appeals that he could not restrain his expression of alarm at the holding and his refusal to follow it:

> The final basis for the *Brabson* opinion concerns me the most. It is that collateral estoppel does not apply because the Texas Department of Public Safety and the Dallas County District Attorney are not "the same parties." I believe they are not parties at all. They are different parts of the executive branch of the State of Texas. The *Brabson* opinion states that an underlying principle of collateral estoppel is that "a party should have an opportunity to litigate an issue of ultimate fact" and "the Dallas County District Attorney had no opportunity to litigate the issue of probable cause for appellee's arrest in the administrative proceeding...." The Dallas County District Attorney did not have that opportunity. The Dallas County District Attorney is simply that, a lawyer. His client, the State of Texas, was the party, and it had notice and motive to aggressively prosecute the issue of ultimate fact in the license revocation proceeding, just as it might do by and through its lawyer, the Dallas County District Attorney, in the DWI case.... [The majority's holding in *Brabson*] is, in my opinion, at least questionable under *Waller v. Florida.*

*Reynolds v. State*, 967 S.W.2d 493, 497 (Tex. App.—Houston [1st Dist.] 1998)(Cohen, J., dissenting).

Of course Justice Cohen is exactly right.[3] The Dallas County District Attorney and the Department of Public Safety are not "parties" in the two proceedings. The State of Texas is the party.[4]

---

**3.** On original submission, the majority pointed to the current statute's provision "that the determination of the administrative judge ' does not preclude litigation of the same or similar facts in a criminal prosecution.'" *Brabson*, 976 S.W.2d at 185 n. 6. Aside from the fact that this statute is probably unconstitutional, *Reynolds*, 967 S.W.2d at 496–97 (Cohen, J., dissenting), the provision stands to illustrate the legislature's failure to assume the position that the district attorney and the department of public safety are different parties. If the legislature viewed the two entities as

constituting different parties, there would be no need to address any collateral estoppel implications.

**4.** In *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), cited by Justice Cohen above, the petitioner was charged by the city of St. Petersburg, Florida, for violating a city ordinance. He was found guilty and sentenced in municipal court. The State of Florida later brought a criminal prosecution, based on the same conduct that gave rise to the action by the

Although the majority does not cite any authority for its holding that the State is not the party here, other courts have addressed this issue.[5] In *Zapata v. Department of Motor Vehicles*, 2 Cal.App.4th 108, 2 Cal. Rptr.2d 855 (4th Div.1991), the court addressed virtually the same question asked by the majority in this case: was the prosecuting attorney in the criminal prosecution and the motor vehicle entity in the revocation

proceedings the "same party" for purposes of collateral estoppel? The California court concluded "the State of California is the real party in interest in both proceedings." *Id.* 2 Cal.Rptr.2d at 858. The court emphasized that "both agencies represent the state, both have the same interest of protecting the public from those who drive under the influence, and both initiate proceedings in an effort to

city. The petitioner alleged double jeopardy barred the State's action. The state court rejected the petitioner's claim, holding that he could be tried in municipal court and again in state court for the same conduct. The Supreme Court granted cert to address "the asserted power of the two courts within one State to place petitioner on trial for the same alleged crime." *Id.* at 390, 90 S.Ct. 1184. The State argued that the municipality and the state should be regarded as separate sovereigns. The Supreme Court disagreed:

"Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as *subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions.*" ... [Certain] provisions of the Florida Constitution demonstrate that the judicial power to try petitioner on the first charges in municipal court *springs from the same organic law* that created the state court of general jurisdiction in which petitioner was tried and convicted for a felony. Accordingly, the apt analogy to the relationship between municipal and state governments is to be found in the relationship between the government of a Territory and the Government of the Unites States. The legal consequence of that relationship was settled in Grafton v. United States . . ., where this Court held that a prosecution in a court of the United States is a bar to a subsequent prosecution in a territorial court, *since both are arms of the same sovereign.*

*Id.* at 392–94, 90 S.Ct. 1184 (quoting in part *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)). The Court distinguished the relationship between a territory and the federal government from the relationship between a state and the federal government:

"The government of a state does not derive its powers from the United States, while the Government of the Philippines owes its existence wholly to the United States, and its judicial tribunals exert their powers by authority of the United States. . . . So that the cases holding that the same acts committed in a state of the Union may constitute an offense against the United States and also a distinct offense against the state, do not apply here, *where the two tribunals that tried the accused exert all*

*their powers under and by authority of the same government*—that of the United States."
*Id.* at 394, 90 S.Ct. 1184 (quoting *Grafton v. United States*, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907)). Likewise, the District Attorney and the Department of Public Safety "exert all their powers under and by the authority of the same government—that of the [State of Texas]." Both are "subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions." *Id.*

5. Some courts appear consistent with the view expressed in this opinion. *United States v. ITT Rayonier*, 627 F.2d 996 (9th Cir.1980)(relationship between federal Environmental Protection Agency and State of Washington Department of Ecology was sufficiently close that EPA was collaterally estopped from litigating issue in federal enforcement action that had already been decided in state enforcement action); *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262 (2nd Cir.1975)(recognizing that doctrine of collateral estoppel applicable in state criminal prosecution to bar evidence suppressed in another state prosecution, but holding doctrine not applicable in this case because defendant failed to move for suppression in second proceeding); *United States v. Evans*, 655 F.Supp. 243 (E.D.La.1987)(holding government collaterally estopped from re-litigating admissibility of evidence previously decided by another federal court in case which government chose to dismiss). Others have held to the contrary. *See State v. Rotter*, 958 S.W.2d 59, 64 (Mo.App. W.D.1997)(holding, for collateral estoppel purposes, no relationship exists between determination of fact in criminal case and determination of fact in administrative proceeding); *State v. Stearns*, 159 Vt. 266, 617 A.2d 140 (1992)(nature of civil suspension proceeding is such that State does not have full and fair opportunity to litigate); *State v. Ratliff*, 304 Or. 254, 744 P.2d 247 (1987)(no basis for application of collateral estoppel where suspension proceedings were expedited and informal in contrast to criminal proceedings). The lack of consistency among the jurisdictions is all the more reason for the majority to entertain briefing and argument on this issue. It is unfathomable that the highest state appellate court for criminal cases would decide an issue on which there is conflicting authority, without calling for briefing and argument, and without citing any authority to support its holding.

obtain sanctions to deter such conduct." *Id.* at 859.

Some final questions come to mind in light of the majority's holding on original submission. Since the individual District Attorney, rather than the State of Texas, is now the recognized party to a criminal proceeding, how does this impact federal writs of habeas corpus in which the State of Texas is represented by the Texas Attorney General? Pursuant to the majority's holding on original submission, the Attorney General would be a different "party" to the action than the District Attorney. Thus, will the Attorney General now be compelled to obtain new findings on which to rely in federal court, since it is a different party than the District Attorney? And what of the jeopardy implications as to a second prosecution for the same criminal activity by a second District Attorney? Given that the District Attorney is a "party" to a criminal proceeding, it is conceivable that two district attorneys from different counties could both prosecute for one criminal transaction that crossed jurisdictional lines, in two separate actions. *See* TEX. CODE CRIM. PROC. art. 13.08 (where property stolen in one county and taken by offender to another, offender may be prosecuted in either county or in county where security agreement filed); *cf Jones v. State,* 945 S.W.2d 852 (Tex.App.—Waco 1997)(addressing venue in multiple counties under article 13.08 or general venue provision in article 13.18), *pet. granted.*

This Court ought to withdraw its opinion on original submission, grant rehearing, and order briefing and argument on the question of "parties."[6] I dissent to the denial of rehearing.

**6.** I continue to maintain, as I did on original submission, that the majority's opinion on original submission was wrong to address such issue at all, as it went far beyond the issue on which we granted review and addressed issues not raised before or addressed by the Court of Appeals. Doing so was beyond the scope of our review. But if the Court is going to write on a controversial legal issue not addressed by the court below or in the petition and briefs before this Court, it ought to call for briefing and argument by the parties.

PRICE, Judge, dissenting to denial of appellee's motion for rehearing.

I dissent from the denial of appellee's motion for rehearing. Because I previously joined the Court's opinion on original submission, I write separately to explain my reasons for believing that we should grant appellee's motion for rehearing.

In retrospect, I should have been shown (as Judge Mansfield was) as concurring only in the judgment. On original submission, the *outcome* of *Brabson* was clearly correct. That is, there were at least two good reasons for holding that the District Attorney was not collaterally estopped from relitigating the issue of probable cause for arrest, even though the Department of Public Safety had previously received an adverse ruling on this same issue in a prior administrative license revocation proceeding. First, the controlling statute did not authorize the administrative law judge to make a finding on probable cause; it then follows that such an unauthorized finding should not preclude relitigation of the issue. *Brabson v. State,* 976 S.W.2d 182, 184 (Tex.Crim.App.1998); *see also Reynolds v. State,* 967 S.W.2d 493, 496 (Tex. App.-Houston [1st Dist.] 1998, pet. filed) (Cohen, J., dissenting). Also, because the issue of probable cause for arrest was not an ultimate fact before the administrative law judge, such a finding did not preclude relitigation of the issue. *Brabson,* 976 S.W.2d at 185; *see also Reynolds,* 967 S.W.2d at 497 (Cohen, J., dissenting).

However, after some reflection, I now believe the Court's proposition that the District Attorney and the Department of Public Safety are not the same parties (*Brabson,* 976 S.W.2d at 184) is highly problematic, and equally important, completely unnecessary to a resolution of the matter.[1]

**1.** Already, several of our intermediate appellate courts have cited *Brabson* as authority for just this proposition. *See State v. Montgomery,* 972 S.W.2d 872, 873–874 (Tex.App.-Corpus Christi 1998, no pet. h.); *Ex parte Richards,* 968 S.W.2d 567, 570 (Tex.App.-Corpus Christi 1998, no pet. h.); *State v. Anderson,* 974 S.W.2d 193, 194–95 (Tex.App.-San Antonio 1998, no pet. h.); *Ex parte Yates,* 966 S.W.2d 743, 744 n. 1 (Tex.App.-San Antonio 1998, no pet. h.); *Ex parte Keeler,* No. 04–97–00812–CR, 1998 WL 429631, at *1 n. 1 (Tex.App.-San Antonio July 31, 1998, no pet. h.) (not designated for publication); *Ex parte*

I will not belabor what has already been more than adequately pointed out—the flaws of the argument that the District Attorney and the Department of Public Safety are not the same parties.[2] Clearly, as each was acting solely as an agent or representative of the State of Texas, it was the State of Texas who was the real party in interest in each proceeding. Once that is understood, it is obvious that the State of Texas is the same party as the State of Texas. This is no different than understanding that when there are two different attorneys acting to represent the same client, the real parties in interest (the client) are the same.

The concurrence argues that the "parties" argument of *Brabson* is sound, primarily on the basis of public policy—i.e., issues such as "probable cause to arrest" are better addressed in the criminal justice system. *See ante*, at 201.[3] However, this proves too much, for the cure does not fit the ailment. That is, such a justification would better support the position that in situations such as the instant case, the doctrine of collateral estoppel will simply not be used as a bar to relitigation of these types of issues. Such a principle is far more sound than the bare and illogical assertion that the State of Texas is not the same party as the State of Texas; it also has the additional benefit of limiting itself to situations such as the instant case, and not threatening to cause problems in different but related areas, as Judge Meyer's dissent points out so well, *ante* at 206–207.

Finally, of course, as I have noted above, there were two very sound reasons for the result reached in this case on original submission. Thus, we need never even have reached the "parties" issues. Therefore, I believe it is imperative that we grant appellee's motion for rehearing, in order to narrow

*Abrams*, No. 04–97–01028–CR, 1998 WL 422274, at *1 n. 1 (Tex.App.-San Antonio July 29, 1998, no pet. h.) (not designated for publication); *Ex parte Ozuna*, No. 04–97–00976–CR, 1998 WL 201466, at *2 n. 1 (Tex.App.-San Antonio April 22, 1998, no pet. h.) (not designated for publication); *Ex parte Biddy*, No. 05–98–00070–CR, 1998 WL 191837, at *2 (Tex.App.Dallas March 19, 1998, no pet. h.) (not designated for publication).

the holding and scope of our original opinion. Such action would be in keeping with the tradition of judicial self-restraint.

For the foregoing reasons, I dissent from the denial of appellee's motion for rehearing.

**2.** See Judge Meyer's dissent to the denial of appellee's motion for rehearing, ante at 203–206; Brabson, 976 S.W.2d at 202–203 (Baird, J., dissenting); Reynolds, 967 S.W.2d at 497 (Cohen, J., dissenting).

**3.** It is notable that this "public policy" justification for the "parties" argument was never made (or even implied) in the Court's opinion on original submission. *See Brabson*, 976 S.W.2d at 184.